FIFTH DIVISION
June 4, 2010

No. 1-09-0768

| | | |
|---|---|---|
| AMI MOORE and DOGGIE DO-RIGHT-911, INC., | ) ) ) | Appeal from the Circuit Court of Cook County |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | |
| | ) | No. 07 L 9302 |
| PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS, INC., d/b/a PETA, DIANE OPRESNIK, JOHN KEENE, and MARY DePAOLO, | ) ) ) | |
| | ) | Honorable |
| Defendants-Appellees. | ) ) | James Egan, Judge Presiding. |
| | ) ) | |

JUSTICE FITZGERALD SMITH delivered the opinion of the court:

Plaintiffs Ami Moore and Doggie Do Right-911, Inc. (collectively plaintiffs), alleged in

the trial court that defendants People for the Ethical Treatment of Animals, Inc. (PETA), Diane

Opresnik, John Keene, and Mary DePaolo (collectively defendants) defamed plaintiffs and

placed them in a false light. The trial court dismissed plaintiffs' first amended complaint with

prejudice and denied their motion for leave to file a second amended complaint. Plaintiffs now

appeal, arguing that (1) defendants' statements constituted defamation *per se* and placed

plaintiffs in a false light[1], and (2) the trial court abused its discretion in denying plaintiffs' motion

---

[1]Although plaintiffs mention "false light" in their brief, they do not specifically allege the cause of action of

false light for any of the defendants, nor do they support their false light claims with references to law or fact.

Accordingly, any argument regarding false light is waived for purposes of this appeal. See Pilat v. Loizzo, 359 Ill.

No. 1-09-0768

for leave to amend.  For the following reasons, we affirm.

## I. BACKGROUND

Doggie-Do-Right is a corporation that is in the business of training dogs, boarding dogs, and providing day care for dogs.  At all times relevant, it was operated by Moore.  On March 27, 2008, Plaintiffs filed a first amended complaint against PETA, Opresnik, Keene, and DePaolo. Count I alleged that PETA defamed plaintiffs when it sent out a press release on September 5, 2006, entitled "PETA Demands Jail Time, Psychiatric Intervention if Alleged Chicago Dog Abuser is Convicted," and an "Action Alert" on its web site entitled "Chicago's Self-Professed 'Dog Whisperer' Accused of Electrocuting Dog's Genitals: Let Your Call for Justice Be Anything but Quiet."  Plaintiffs alleged that both the press release and the action alert named Moore and Doggie-Do-Right.  Count II alleged that PETA placed plaintiffs in a false light.

Count III alleged that Opresnik defamed plaintiffs by making certain statements that were published in the Chicago Reader "on or about April 2, 2007."  The alleged statement was that Moore strapped an electronic collar around the genitals of a bichon frise, and shocked the dog such that "[t]he Bichon was literally lifted into the air, that's how strong the shock was." Plaintiffs alleged that Opresnik also told Pam Zekman, in an interview which aired on CBS Channel 2 News on or about August 9, 2007, that Moore strapped an electronic collar around the genitals of a bichon frise and shocked the dog such that it "practically lifted off the ground."

Plaintiffs averred that on September 5, 2006, PETA published a press release, which still

App. 3d 1062, 1063 (2005) (appellant must argue the points that he or she raises or they are waived; mere conclusory statements without supporting analysis is not enough); 210 Ill. 2d. R. 341.

2

appears on the Internet, which stated that "Moore allegedly placed a shock device on one dog's genitals" and that Moore "reportedly strapped the devices on one dog's genitals." The action alert that was published on the Internet that same day, which allegedly remains on the Internet, states that "Moore reportedly strapped the devices on one dog's genitals."

Plaintiffs alleged that "on information and belief," Opresnik made the aforesaid allegations, which were then repeated and published by PETA, and that such allegations were false. Count IV of plaintiffs' first amended complaint alleged that Opresnik's statements were false and placed plaintiffs in a false light which would be highly offensive to a reasonable person.

Count V alleged defamation against Keene. Plaintiffs claimed that Keene posted, and continues to post, statements on the Internet calling Moore a "so-called dog trainer." Keene also posted that citizens had to witness Moore's "continued acts of cruelty" in handling dogs and that the dogs being trained by Moore prior to her arrest continued to suffer under her "cruel techniques." Plaintiffs alleged that such statements were false and that Keene therefore defamed plaintiffs. Count VI of the complaint alleged that such false statements placed Moore in a false light and would be highly offensive to a reasonable person.

Count VII of the complaint accused DePaolo of making substantially similar allegations to those that Opresnik allegedly made, which were then published by PETA. Plaintiffs further averred that "on information and belief, Mary DePaolo made substantially similar statements, regarding Moore having a shock collar on a dog's genitals to others in Moore's neighborhood at various times within one year of this suit being filed." Plaintiffs claimed that DePaolo knew

3

such statements were false. Count VIII alleged that such false statements placed Moore in a false light and would be highly offensive to a reasonable person.

On April 29, 2008, PETA was dismissed from the case due to settlement.

On May 16, 2008, Opresnik filed a motion under section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2006)) to dismiss counts III and IV of plaintiffs' first amended complaint. Opresnik alleged that the complaint did not specifically identify her allegedly defamatory statements in the body of the complaint. Opresnik noted that her complete published statement in the Chicago Reader appeared as follows:

> "Diane Opresnik, a friend of Davis's, says she saw Moore with the same dog that week. 'The Bichon was literally lifted into the air, that's how strong the shock was,' Opresnik says. 'I'd never seen someone stray a collar around a dog's genitals before, and when I confronted her, she said something like, "I'm just making sure this Bichon will never run into the street and get hit by a car. A live Bichon is better than a dead Bichon." *** It was so disturbing. I still can't get that sound out of my head.' "

Opresnik further alleged that the comments she made on the Channel 2 News segment appeared as follows in the transcript:

> "One was around the neck, and then one was around the genitals [indicating on the video the waist/hindquarters of the dog]. She proceeds to go around the entire perimeter of the park zapping the dog every five seconds. The dog practically lifted off the ground. It was extremely disturbing."

4

No. 1-09-0768

Opresnik claimed that the above statements, taken individually or collectively, did not amount to defamation, defamation *per se*, or false light.

On September 4, 2008, DePaolo filed a motion to dismiss counts VII and VIII of the first amended complaint pursuant to section 2-619 (735 ILCS 5/2-619 (West 2006)) and section 2-615 (735 ILCS 5/2-615) (West 2006)). In support of such motion, and pursuant to section 2-615, DePaolo alleged that plaintiffs' complaint had to be dismissed because plaintiffs failed to filed their claims for defamation and false light against DePaolo within the one-year statute of limitations.

In the alternative, DePaolo claimed that plaintiffs' complaint should be dismissed pursuant to section 2-615 for failing to properly state a cause of action for defamation or false light.[2]

On December 3, 2008, the trial court dismissed with prejudice, pursuant to section 2-615, plaintiffs' defamation action (count III) and false light action (count IV) as to Opresnik. The trial court also dismissed with prejudice, pursuant to section 2-615, plaintiffs' defamation action (count V) and false light action (count VI) against Keene. The trial court denied plaintiffs' motion for leave to amend their first amended complaint. And finally, the trial court dismissed with prejudice count VII and count VIII of plaintiffs' complaint as to DePaolo.

---

[2]Subsequent to the filing of all briefs on appeal, DePaolo filed a motion for sanctions against plaintiffs alleging that plaintiffs' argument on appeal with regards to her was frivolous and in violation of Illinois Supreme Court Rule 375 (210 Ill. 2d. R. 375), because plaintiffs failed to include any factual evidence to support their claim against DePaolo. We denied such motion and will address the merits of plaintiffs' argument in this opinion.

Plaintiffs orally requested leave to file a second amended complaint during arguments regarding defendants' motion to dismiss. The trial court denied their request. Plaintiffs then filed a motion to reconsider the trial court's denial of their motion for leave to file an amended complaint and the trial court's dismissal of their first amended complaint with prejudice. They claimed they should have been allowed to specifically allege in their second amended complaint that the dog was female and that it was physically impossible to strap a collar around the genitals of a female dog.

The trial court denied plaintiffs' motion to reconsider, and the plaintiffs now appeal.

## II. ANALYSIS

On appeal, plaintiffs argue that (1) defendants' statements constituted defamation *per se*, and (2) the trial court abused its discretion in denying plaintiffs' motion for leave to amend.

### A. Standard of Review

We review the grant of a motion to dismiss pursuant to section 2-615 *de novo*. Compton v. Country Mutual Insurance Co., 382 Ill. App. 3d 323, 325 (2008). We review the dismissal of a complaint pursuant to section 2-619 *de novo*. River Plaza Homeowner's Ass'n v. Healey, 389 Ill. App. 3d 268, 275 (2009). The standard of review for whether leave to file an amended complaint should have been granted is abuse of discretion. Droen v. Wechsler, 271 Ill. App. 3d 332, 335 (1995).

### B. Defamation *Per Se*

Plaintiffs' first argument on appeal is that the allegations in their complaint against all defendants were sufficient to state a cause of action for defamation *per se*. To establish

defamation, a plaintiff must present facts showing that the defendant made a defamatory statement about the plaintiff, the defendant made an unprivileged publication of that statement to a third party, and the publication caused damages. Solaia Technology, LLC v. Specialty Publishing Co., 221 Ill. 2d 558, 579 (2006). "A defamatory statement is a statement that harms a person's reputation to the extent it lowers the person in the eyes of the community or deters the community from associating with her or him." Solaia, 221 Ill. 2d at 579. Statements that do not contain factual assertions are protected under the first amendment and may not form the basis of a defamation action. J. Maki Construction Co. v. Chicago Regional Council of Carpenters, 379 Ill. App. 3d 189, 199-200 (2008). Likewise, a statement may not form the basis of a defamation action where it is substantially true. J. Maki Construction, 379 Ill. App. 3d at 203.

There are two types of defamatory statements: defamation *per se* and defamation *per quod*. Brennan v. Kadner, 351 Ill. App. 3d 963, 968 (2004). In an action for defamation *per quod*, the plaintiff must plead and prove actual damages in order to recover. Imperial Apparel, Ltd. v. Cosmo's Designer Direct, Inc., 227 Ill. 2d 381, 390 (2008). If a defamatory statement is actionable *per se*, on the other hand, the plaintiff need not plead or prove actual damage to his or her reputation to recover. Bryson v. News America Publications, Inc., 174 Ill. 2d 77, 87 (1996). "Rather, statements that fall within these actionable *per se* categories are thought to be so obviously and materially harmful to the plaintiff that injury to [the plaintiff's] reputation may be presumed." Bryson, 174 Ill. 2d at 87.

"Illinois law recognizes five categories of statements which are considered actionable *per se*: (1) those imputing the commission of a criminal offense; (2) those imputing infection with a

7

loathsome communicable disease; (3) those imputing an inability to perform or want of integrity in the discharge of duties of office or employment; (4) those that prejudice a party, or impute lack of ability, in his or her trade, profession or business; and (5) those imputing adultery or fornication." Van Horne v. Muller, 185 Ill. 2d 299, 307 (1998); see also Bryson, 174 Ill. 2d at 88-89. Plaintiffs argue that the defendants each made statements that imputed the commission of a crime and that imputed a lack of ability or otherwise prejudiced plaintiffs in their profession of dog training. We will address each defendant individually.

### 1. Diane Opresnik

The complained-of comments by Opresnik allegedly appeared in the Chicago Reader on or about April 2, 2007. Plaintiffs take issue with Opresnik's comment stating that Moore strapped an electronic collar around the genitals of a bichon frise and shocked the dog such that it was "literally lifted into the air, that's how strong the shock was." The following is the entire passage:

> " 'The Bichon was literally lifted into the air, that's how strong the
> shock was,' Opresnik says. 'I'd never seen someone stray a collar
> around a dog's genitals before, and when I confronted her, she said
> something like, "I'm just making sure this Bichon will never run
> into the street and get hit by a car. A live Bichon is better than a
> dead Bichon." *** It was so disturbing. I still can't get that sound
> out of my head.' "

Plaintiffs also take issue with a statement that Opresnik made to Channel 2 News. The

statement plaintiffs point to is where Opresnik stated that when the dog was shocked it "practically lifted off the ground." The following is the full passage as it appears in the transcript:

> "One was around the neck, and then one was around the genitals. She proceeds to go around the entire perimeter of the park zapping the dog every five seconds. The dog practically lifted off the ground. It was extremely disturbing."

Plaintiffs claim that the above statements amount to defamation *per se* because they impute the commission of the crime of animal cruelty (see 510 ILCS 70/3.01 (West 2006)), and they impute a lack of ability or otherwise prejudice plaintiffs in their profession of dog training. Opresinik responds that her statements were not verifiably false and that they were simply innocent observations of the plaintiffs' negative reinforcement training technique.

To constitute defamation *per se* based on imputing the commission of a crime, " 'the crime must be an indictable one, involving moral turpitude and punishable by death or by imprisonment in lieu of a fine.' " Kirchner v. Greene, 294 Ill. App. 3d 672, 680 (1998), quoting Adams v. Sussman & Hertzberg, Ltd., 292 Ill. App. 3d 30, 46 (1997). " 'While the words charging the commission of a crime need not meet the technical requirements that are necessary for an indictment, the words must fairly impute the commission of a crime.' " Kirchner, 249 Ill. App. 3d at 680, quoting Adams, 292 Ill. App. 3d at 47.

The animal cruelty statute states that "[n]o person or owner may beat, cruelly treat, torment, starve, overwork or otherwise abuse any animal." 510 ILCS 70/3.01 (West 2006). A

9

review of Opresnik's language in the case at bar reveals that plaintiffs' claim fails because there is no positive factual statement of criminal animal cruelty to support a defamation *per se* claim and, furthermore, the statements can be innocently construed.

The statements regarding Moore's placement of an electric collar on a dog's genitals are not positive factual statements that fairly impute criminal animal cruelty. Rather, the statements are consistent with how Moore herself described the placement of the collars. She admitted in an attachment to her first amended complaint that a training technique she used was to place an electric collar around a dog's neck as well as around its "hindquarters." We cannot say that Opresnik's use of the term "genitals" rather than "hindquarters" converted her statement into one which imputes criminal behavior.

However, even if we were to find that Opresnik's statements imputed a criminal offense, "the innocent construction rule applies in determining whether a statement alleged to be defamatory *per se* imputes a criminal offense." Kirchner, 294 Ill. App. 3d at 680. " 'If the actual words spoken [or written] do not by themselves denote criminal (or unethical) conduct and in common usage have a more flexible and broader meaning than ascribed by plaintiff, then, as a matter of law, the words are nonactionable as defamation *per se*.' " Kirchner, 294 Ill. App. 3d at 680, ,quoting Harris Trust & Savings Bank v. Phillips, 154 Ill. App. 3d 574, 581 (1987). Whether an alleged defamatory statement is entitled to an innocent construction in an action for defamation *per se* is a question of law, which we review *de novo*. Tuite v. Corbitt, 224 Ill. 2d 490, 503 (2006). The court must consider the allegedly defamatory statement in context with the words and the implications therefrom given their natural and obvious meaning. Tuite, 224 Ill. 2d

at 503; Chapski v. Copley Press, 92 Ill. 2d 344, 352 (1982). Thus, in determining the context of the defamatory statements, we must read the writing containing the defamatory statement as a whole. Tuite, 224 Ill. 2d at 504.

Here, the complained-of comments appeared in a Chicago Reader article entitled "Who Should You Trust to Train Your Dog?" The article described several different training methods, including positive and negative reinforcement methods. The article further described the use of electric collars in dog training in general. In the CBS interview, Opresnik was asked to describe what she witnessed. The use of electric dog collars as a training method is not a new or unheard of technique. In fact, in Moore's attachment to her first amended complaint, she included an exhibit whereby she described her training methods and states that she uses multiple electronic collars on dogs, including one wrapped around the dog's hindquarters. If such exhibit does not impute animal cruelty and in fact touts the uniqueness of her dog training, then it follows that Opresnik's statements impute neither animal cruelty nor a lack of Moore's dog training ability. Accordingly, Opresnik's statements were subject to an innocent construction.

Plaintiffs argue that innocent construction does not apply because Opresnik used phrases like, "It was so disturbing. I still can't get the sound out of my head," and "It was extremely disturbing." Such language is a mere reaction and interpretation of what Opresnik witnessed. A person can be disturbed by a wide range of behavior and, therefore, cannot be accused of defamation when that person is reacting to such behavior.

Moreover, we find that Opresnik's statements regarding Moore's training techniques were substantially true. A defendant is not liable for a defamatory statement if the statement is

No. 1-09-0768

true. <u>Wynne v. Loyola University of Chicago</u>, 318 Ill. App. 3d 443, 451 (2000). Only "substantial truth" is required for the defense. <u>Wynne</u>, 318 Ill. App. 3d at 451. While determining "substantial truth" is normally a question for the jury, the question is one of law where no reasonable jury could find that substantial truth had not been established. <u>Wynne</u>, 318 Ill. App. 3d at 451-52. Substantial truth refers to the fact that a defendant need prove only the "gist" or the "sting" of the statement. <u>American International Hospital v. Chicago Tribune Co.</u>, 136 Ill. App. 3d 1019, 1022 (1985).

In the case at bar, as stated above, Moore herself admitted to using multiple shock collars including one on the hindquarters of the dog. Opresnik stated that there was a shock collar around the bichon's genitals. Genitals are defined as, "of, relating to, or being a sexual organ." Webster's Ninth New Collegiate Dictionary 511 (1988). Sexual organs reside in the hindquarters of dogs. Therefore, we find that Opresnik's description of the location of the shock collar as the genitals is substantially true, and therefore not actionable as defamation *per se*.

### 2. John Keene

Plaintiffs allege that Keene's statements which were posted on the Internet constituted defamation *per se*. However, plaintiffs do not allege where these posting were made or at what time they were made. See <u>Green v. Rogers</u>, 234 Ill. 2d 478, 492 (2009), citing <u>Mittelman v. Witous</u>, 135 Ill. 2d 220, 229-30 (1989), *abrogated on other grounds by* <u>Kuwik v. Starmark Star Marketing & Administration, Inc.</u>, 156 Ill. 2d 16 (1993) ("[a]lthough a complaint for defamation *per se* need not set forth the allegedly defamatory words *in haec verba*, the substance of the statement must be pled with sufficient precision and particularity so as to permit initial judicial

review of its defamatory content"). Accordingly, due to lack of sufficient precision, plaintiffs have waived this issue on review. Waiver aside, we will nevertheless review this issue.

The first statement plaintiffs take issue with was Keene's reference to Moore as a "so-called dog trainer." This does not impute a lack of ability on Moore's part to perform her job. The paragraph within which this phrase appears describes the story that Pam Zekman aired on Channel 2 News. In that story, Zekman indicated that there are no recognized certifications or licenses for dog trainers. Accordingly, Zekman stated that anyone can call himself or herself a dog trainer. Calling Moore a "so-called" dog trainer therefore does not prejudice her business or impute a lack of ability to dog train because there is no such thing as a certified dog trainer.

The second statement followed a statement which stated that Moore "opened a training facility in the West Loop neighborhood and shortly thereafter was seen by several area residents using what the residents felt [were] cruel techniques on various dogs." The complained-of statement, in context, allegedly read as follows:

> "Furthermore, these citizens were getting so frustrated by the
> continued acts of cruelty they had to witness that they even talked
> about pooling their money to hire a private investigator to follow
> Ms. Moore and collect evidence."

Such a statement, posted by Keene on the Internet, does not impute criminal behavior or Moore's lack of dog-training abilities. Rather, it is a statement regarding how the residents of Moore's neighborhood felt she was treating the dogs in her care and their responses to such

treatment. Keene did not himself state that Moore was being cruel to animals or that he witnessed her being cruel to animals. The first requirement in proving defamation is that "a plaintiff must present facts showing that the defendant made a [defamatory] statement about the plaintiff." Solaia, 221 Ill. 2d at 579. Because Keene did not himself make the defamatory statements, his statements fall outside the scope of defamation *per se*.

### 3. Mary DePaolo

Finally, plaintiffs complain that DePaolo made statements which constituted defamation *per se*. However, the only argument in support of such allegation within plaintiffs' brief states as follows: "It was alleged that DePaolo falsely claimed that an electronic shock device was strapped to the dog's genitals." Plaintiffs' brief then goes on to focus on the other defendants, without mentioning DePaolo by name again. We find that this conclusory argument is without merit as it is unsupported by specific allegations. See Niedermeyer v. Streamwood Park District, 3 Ill. App. 3d 1078 (1972) (reviewing courts should disregard conclusions of law or conclusions of material fact unsupported by specific factual allegations). Thus, plaintiffs have waived this argument in regard to DePaolo.

However, even if we were to review this issue, we would nevertheless find that DePaolo's comments did not constitute defamation *per se*. Plaintiffs' first amended complaint does not specifically state what DePaolo actually said. Instead, the complaint alleged that, upon information and belief, the plaintiffs believed DePaolo made statements that were repeated in a press release from PETA as follows: "Moore allegedly placed a shock device on one dog's genitals," and, "Moore reportedly strapped the devices on one dog's genitals."

No. 1-09-0768

DePaolo first argues that first amended complaint against DePaolo was properly dismissed by the trial court because plaintiffs failed to file their defamation claim within the one-year statute of limitations. The Illinois Code of Civil Procedure provides that a motion for dismissal is appropriate if "[t]he action was not commenced within the time limited by law." 735 ILCS 2-619(a)(5) (West 2006).

The statute of limitations in Illinois for a claim for defamation is one year from when the cause of action accrued. 735 ILCS 5/13-201 (West 2006). Under Illinois law, the cause of action for defamation accrues, and the statute of limitations begins to run, on the date of publication of the defamatory material. Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc., 61 Ill. 2d 129, 131-32 (1975). DePaolo was first named as a defendant in the first amended complaint, which was filed on March 27, 2008. Such complaint alleged that the PETA press release was published on September 5, 2006. Accordingly, it follows that DePaolo's alleged statements to PETA must have occurred prior to the publication of the September 5, 2006, press release. Thus, the trial court properly dismissed the action against DePaolo pursuant to section 2-619 for falling outside the statute of limitations period.

Plaintiffs argue, however, that although the first PETA publication was on September 5, 2006, PETA continued to publish the press release on its web site at the time the first amended complaint was filed, bringing the press release within the statute of limitations. They also allege that the language in their first amended complaint brought the claim within the statute of limitations. We disagree.

With regard to "republishing," the issue here is not when the PETA press release was

15

published, but rather when DePaolo made her alleged statements to PETA, since this is an action against DePaolo and not PETA. And presumably, if PETA published these statements on September 5, 2006, then DePaolo made such statements prior to that date. Accordingly, her statements fell outside the statute of limitations for defamation.

As to the language that appears in plaintiffs' first amended complaint, such language appeared as follows: "On information and belief, Mary DePaolo made substantially similar statements, regarding Moore having a shock collar on a dog's genitals to others in Moore's neighborhood at various times within one year of this suit being filed." As we have noted above, a pleading for defamation must be pled with sufficient precision and particularity. See Green, 234 Ill. 2d at 492. Plaintiffs fail to mention when these statements were made to neighbors, to which neighbors the statements were made, and what exactly was said to the neighbors. Accordingly, we are unpersuaded by plaintiffs' argument that such vague language in their first amended complaint brought this claim within the statute of limitations.

However, even if we were to find that DePaolo's alleged statements fell within the statute of limitations, we would nevertheless find that they did not amount to defamation *per se*. Plaintiffs argue that her alleged comments imputed the commission of a crime and imputed a lack of ability to be a dog trainer. As DePaolo notes in her brief, PETA's press release did not mention DePaolo by name. Rather, plaintiffs' claim, "on information and belief," that PETA acquired its information regarding the shock collars from DePaolo is unsupported by factual allegations. Their first amended complaint does not specifically state what DePaolo ever said, when DePaolo made statements to PETA, to whom she communicated, and in what manner she

16

made the statements. See <u>Green</u>, 234 Ill. 2d at 492 ("[a]lthough a complaint for defamation *per se* need not set forth the allegedly defamatory words *in haec verba*, the substance of the statement must be pled with sufficient precision and particularity so as to permit initial judicial review of its defamatory content"). Accordingly, because plaintiffs did not plead the substance of the statement with sufficient precision and particularity, they failed to adequately state a cause of action for defamation *per se*.

Even if we were to find that they provided sufficient information, we would nevertheless find that the statements allegedly made would not constitute defamation *per se* for the reasons set forth above in connection with both Opresnik and Keene.

### C. Motion for Leave to File Second Amended Complaint

Plaintiffs' final contention on appeal is that the trial court erred in refusing to grant plaintiffs leave to file a second amended complaint. Specifically, plaintiffs argue that they should have been granted leave to file so they could amend their complaint to specify that the dog in question was female. Defendants respond that the trial court was within its discretion when it denied plaintiffs leave to file a second amended complaint because the proposed changes would not have cured the deficiencies in plaintiffs' first amended complaint. We agree with defendants.

Whether to allow an amendment of a complaint is a matter within the sound discretion of the trial court, and absent an abuse of that discretion, the court's determination will not be overturned. <u>Compton v. Country Mutual Insurance Co.</u>, 382 Ill. App. 3d 323, 331 (2008). An abuse of discretion will be found only where no reasonable person would take the view adopted

No. 1-09-0768

by the trial court. <u>Compton</u>, 382 Ill. App. 3d at 331-32.

In considering whether a trial court abused its discretion in ruling on a motion for leave to file an amended complaint, we consider the following factors: " '(1) whether the proposed amendment would cure the defective pleading; (2) whether other parties would sustain prejudice or surprise by virtue of the proposed amendment; (3) whether the proposed amendment is timely; and (4) whether previous opportunities to amend the pleadings could be identified.' " <u>Compton</u>, 382 Ill. App. 3d at 332, quoting <u>Loyola Academy v. S&S Roof Maintenance, Inc.</u>, 146 Ill. 2d 263, 273 (1992).

Here, plaintiffs' only proposed change was to add that the bichon in question was female. All other allegations against defendants remained the same. We do not see how the gender of the dog would not have changed the nature of any of the statements made by the defendants. At oral arguments, plaintiffs' counsel argued that if the dog was female, that would make it impossible for an electric collar to be strapped around the dog's genitals. We disagree. As stated above, "genitals" is a broad term, the meaning of which encompasses body parts of or related to the genitals. We fail to see how it is impossible for a collar wrapped around a female dog's hindquarters to touch parts of the dog that are of and related to its genitals. Therefore, stating that the dog in question was female would not have cured the deficiencies in plaintiffs' first amended complaint.

Moreover, plaintiffs' motion for leave to file was untimely. The motion was made during oral argument on defendants' motion to dismiss. Additionally, plaintiffs knew the gender of the dog when the original complaint was filed and therefore could have pled the gender at an earlier

18

time.  Accordingly, we find that the trial court did not abuse its discretion in denying their motion

for leave to file a second amended complaint.

III. CONCLUSION

For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

Judgment affirmed.

TOOMIN, P.J., and HOWSE, J., concur.