# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Jacobson v. Gimbel*, 2013 IL App (2d) 120478

---

| | |
|---|---|
| Appellate Court Caption | MARC JACOBSON, Plaintiff-Appellant, v. SHERRY GIMBEL, Defendant-Appellee. |
| District & No. | Second District<br>Docket No. 2-12-0478 |
| Filed | March 27, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Plaintiff's second amended complaint for defamation was properly dismissed, since the statements defendant made alleging that plaintiff "helped" defendant's husband commit suicide were reasonably capable of an innocent interpretation, and absent a factual context, the statements were nonactionable opinions. |
| Decision Under Review | Appeal from the Circuit Court of Lake County, No. 10-L-1069; the Hon. Margaret J. Mullen, Judge, presiding. |
| Judgment | Affirmed. |

| Counsel on Appeal | Brian R. Holman, Dennis H. Stefanowicz, and Tara Beth Davis, all of Holman & Stefanowicz, LLC, of Chicago, for appellant. |
|---|---|
| | Rod Radjenovich, of Jeffrey Strange & Associates, of Wilmette, for appellee. |
| Panel | JUSTICE McLAREN delivered the judgment of the court, with opinion. Justices Zenoff and Schostok concurred in the judgment and opinion. |

**OPINION**

¶ 1 Plaintiff, Marc Jacobson, appeals from a circuit court order dismissing his second amended complaint alleging defamation by defendant, Sherry Gimbel. On appeal, plaintiff argues that the trial court erred by: (1) dismissing his original complaint; (2) dismissing his first amended complaint, because certain allegations contained in his first amended complaint related back to his original complaint; and (3) dismissing his second amended complaint, because the trial court improperly determined that the alleged defamatory *per se* statements are capable of an innocent construction. We affirm.

¶ 2 I. BACKGROUND

¶ 3 On March 28, 2009, Stuart Gimbel, defendant's husband, committed suicide. The Lake County coroner's office determined that the cause of Stuart's death was suffocation due to the inhalation of helium.

¶ 4 On November 19, 2010, plaintiff filed a complaint against defendant, alleging defamation *per se*. Paragraphs 1 through 11 alleged the following. Plaintiff was a friend and business associate of Stuart's. In the mid-afternoon of the day Stuart committed suicide, plaintiff received a text message from Stuart reading:

"I'm gonna be taking my life and I want you to take care of my family and notify them. *** You can come by way of the back door. I'm leaving it open. Thanks for everything. Bye."

After receiving Stuart's text message, plaintiff immediately left his home and, as instructed, entered Stuart's home through an unlocked door. Plaintiff found Stuart in a chair with a plastic bag wrapped around his head. Under the bag was a surgical-type mask with hoses that were attached to a helium tank. Plaintiff immediately pulled the bag off Stuart's head and called 911. The Lake Forest police department and paramedics responded to the 911 call. Stuart was pronounced dead at Lake Forest Hospital that day. The Lake County coroner's office opined that Stuart committed suicide and that his death was caused by suffocation due

to the inhalation of helium.

¶ 5    The complaint also alleged the following:

"12. Upon information and belief, after [Stuart's] death and through December 24, 2009, the Defendant has implicated the Plaintiff in her late husband's death.

13. On information and belief, a number of individuals have had numerous and ongoing conversations with the Defendant relating to the Plaintiff coercing [Stuart's] death, including Ronald Fragen, Carol Fragen and Lenny Goldstein.

14. The Plaintiff has been made aware that the Defendant knowingly, intentionally, and with actual malice made false statements about the Plaintiff which implicate that he coerced [Stuart] into killing himself. The defamatory statements include, but are not limited to the following:

a. 'Ask Marc Jacobson about Stuart's death, he helped him.'

b. 'Marc Jacobson helped Stuart kill himself.'

c. 'Marc Jacobson is why Stuart is dead.'

d. 'Marc had a hand in Stuart's death.'

15. With knowledge of the falsity, Defendant made said statements in personal and telephone conversations with the Fragens and Goldstein in such a way that was loud enough for everyone in the general area to hear.

16. The intentionally false statements made by Defendant are considered defamatory *per se* because the words accuse Plaintiff of coercing Stuart's suicide, which if true, would be a criminal offense in the State of Illinois."

¶ 6    On January 7, 2011, defendant filed a combined motion to dismiss plaintiff's complaint pursuant to sections 2-615, 2-619, and 2-619.1, of the Code of Civil Procedure (Code) (735 ILCS 5/2-615, 2-619, 2-619.1 (West 2010)). Defendant argued that, pursuant to section 2-619 of the Code, the complaint should be dismissed because plaintiff signed a general release in favor of defendant on November 16, 2009. Further, defendant alleged that it was clear that plaintiff and his counsel knew that the alleged defamatory statements were made before the release was signed, based upon an email plaintiff's counsel sent to defendant's counsel on November 10, 2009. Defendant attached the email to the motion to dismiss. It states, in part:

"There is one final matter that Marc had asked to address with you. Apparently, several people in the community have been told by Sherry Gimbel that Marc either 'assisted with' or 'pushed Stuart to suicide'. These are not only false, but slanderous statements about my client. Instead of filing suit, he simply would like Sherry to sign a statement stating she will not make any such further remarks, and apologizes for any statements she has made to date."

Defendant also alleged that plaintiff signed the release on November 18, 2009. Defendant filed the release under seal. Defendant also argued that plaintiff's claim was barred pursuant to section 13-201 of the Code (735 ILCS 5/13-201 (West 2010)) because it was filed more than one year after plaintiff knew that the alleged defamatory statements had been made. In addition, defendant argued that the complaint failed to state a cause of action (735 ILCS 5/2-615 (West 2010)) because the alleged statements do not constitute defamation *per se* or

defamation *per quod*.

¶ 7    On March 15, 2011, the trial court granted defendant's motion to dismiss. The trial court's order states:

"[The] Court finds that Plaintiff had knowledge of [the] alleged defamatory statements prior to November 18, 2009[,] and therefore any cause of action for defamatory statements made prior to November 18, 2009[,] are barred pursuant to the November 18, 2009[,] Release."

The trial court granted plaintiff 28 days to file a "first amended complaint."

¶ 8    On April 18, 2011, plaintiff filed a first amended complaint realleging paragraphs 1 through 11 from his original complaint. Further, paragraph 15 of plaintiff's first amended complaint alleged the same four defamatory statements alleged in the original complaint, but it alleged that the statements "were made to Lenny Goldstein during the week of December 10, 2009[,] through December 17, 2009." Paragraph 15 also alleged four additional defamatory statements defendant made to Lenny Goldstein during the same period of time, namely:

"e. 'Marc had three-million reasons why he helped Stuart kill himself.'

f. 'Marc should never have helped Stuart kill himself.'

g. 'Marc should have done more to prevent Stuart's death instead of helping him do it.'

h. 'Stuart was not mechanically inclined enough to kill himself. There was no way Stuart could have done this himself, Marc had to have helped him and I know he did.' "

In paragraph 17, plaintiff alleged seven defamatory statements defendant made to Carol and Ronald Fragen from November 18, 2009, through December 24, 2009. The defamatory statements alleged in paragraph 17 are:

"a. 'Ask Marc Jacobson about Stuart's death, he helped him.'

b. 'Marc helped Stuart kill himself.'

c. 'Marc Jacobson is why Stuart is dead.'

d. 'Marc had a hand in Stuart's death.'

e. 'Marc helped Stuart kill himself.'

f. 'Stuart couldn't physically kill himself without Marc's help.'

g. 'Marc had motivations to help Stuart kill himself; he wanted to get his money.' "

¶ 9    On May 18, 2011, defendant filed a combined motion to dismiss plaintiff's first amended complaint pursuant to sections 2-615, 2-619 and 2-619.1 of the Code. Defendant argued that the newly alleged defamatory statements must be dismissed pursuant to section 2-619 of the Code because they were time-barred pursuant to section 13-201 of the Code. Defendant also argued that plaintiff's second amended complaint must be dismissed pursuant to section 2-615 of the Code because the alleged defamatory statements do not constitute defamation *per se*. Defendant argued that the alleged statements: (1) do not fairly impute the commission of a crime; (2) are reasonably capable of an innocent construction; and (3) do not impute a crime involving moral turpitude.

¶ 10    On July 26, 2011, the trial court granted defendant's motion to dismiss, in part. The trial court dismissed any cause of action based on the alleged defamatory statements in paragraphs 15(e), (f), (g), and (h) and 17(e), (f), and (g). The trial court struck the alleged defamatory statements in paragraphs 15(c) and (d) and 17(c) and (d) and allowed the remaining alleged defamatory statements, in paragraphs 15(a) and (b) and 17(a) and (b), to stand. Defendant was given leave to answer or otherwise plead as to these remaining statements.

¶ 11    On September 1, 2011, defendant filed a motion to reconsider the trial court's July 26, 2011, order, arguing that the trial court erred by allowing the remaining statements to stand. Defendant argued that plaintiff's allegations "are fatally defective in that he failed to plead context of the entire conversations containing the allegedly defamatory statements." Defendant argued that, without such context, the trial court could not determine whether the statements were susceptible to an innocent construction or were constitutionally protected opinions.

¶ 12    On October 25, 2011, the trial court granted defendant's motion to reconsider, dismissed plaintiff's first amended complaint in its entirety, and gave plaintiff leave to file a second amended complaint.

¶ 13    On December 15, 2011, plaintiff filed his second amended complaint, alleging defamation *per se* and realleging paragraphs 1 through 11 from his first amended complaint. Plaintiff's second amended complaint also alleged the following:

"12. Upon information and belief, after [Stuart's] death and through December 24, 2009, the Defendant has implicated the Plaintiff in her late husband's death. The Plaintiff was made aware of these defamatory statements by Ronald Fragen and Lenny Goldstein.

13. On information and belief, a number of individuals, including, but not limited to, Ronald Fragen and Lenny Goldstein, had numerous and ongoing conversations with the Defendant relating to the Plaintiff's inducement, coercion, and/or participation in the physical act by which [Stuart] committed suicide.

14. The Plaintiff has been made aware by Ronald Fragen, Carol Fragen and Lenny Goldstein that the Defendant knowingly, intentionally, and with actual malice made false statements about the Plaintiff which implicate the Plaintiff's involvement and/or participation in [Stuart's] death by suicide.

15. The Defendant's defamatory statements that were made to Lenny Goldstein during the week of December 10, 2009, through December 17, 2009, include but are not limited to the following:

a. 'Ask Marc Jacobson about Stuart's death, he helped him.'

b. 'Marc Jacobson helped Stuart kill himself.'

16. The aforementioned statements were made to Lenny Goldstein during personal conversations with the Defendant while Defendant was in Palm Springs, California. Venues for said conversations and defamatory statements include, but are not limited to: dinner at Sweet Sue's Restaurant and while driving Defendant to the airport in California.

17. The context of the conversations in which the defamatory statements made by the

-5-

Defendant to Lenny Goldstein were made during the Defendant's personal conversations surrounding the facts, cause, police investigation, and fault of [Stuart's] death by suicide.

18. The Defendant's defamatory statements that were made to Carol and Ronald Fragen during the time period of November 18, 2009 through December 24, 2009, include, but are not limited to the following:

    a. 'Ask Marc Jacobson about Stuart's death, he helped him.'

    b. 'Marc Jacobson helped Stuart kill himself.'

19. The Defendant made the aforementioned statements to Carol and Ronald Fragen on at least five separate occasions during the time period of November 18, 2009 through December 24, 2009. The personal conversations with the Defendant took place on the phone and in person while Defendant was in California. Venues for said conversations and defamatory statements include, but are not limited to: the Fragen's [*sic*] home located in California and the Defendant's California residence located in Palm Desert, California.

20. The context of the conversations in which the defamatory statements made by the Defendant to Carol and Ronald Fragen were made during the Defendant's personal conversations surrounding the facts, cause, police investigation, and fault of [Stuart's] death by suicide."

¶ 14      On February 1, 2012, defendant filed a motion to dismiss plaintiff's second amended complaint pursuant to section 2-615 of the Code, arguing that plaintiff's second amended complaint was deficient for lacking context such that the trial court could not apply the innocent construction rule. Defendant argued that plaintiff failed to "set forth the entire conversations in their entirety" and, thus, failed to plead defamation *per se* with sufficient "precision and particularity." Defendant argued that therefore the second amended complaint failed to state a claim for defamation *per se*.

¶ 15      On April 3, 2012, the trial court granted defendant's motion to dismiss plaintiff's second amended complaint. The trial court's order states, in part: "The Court finds that the alleged defamatory statements, including the use of the word 'helped,' is capable of innocent construction."

¶ 16      On April 26, 2012, plaintiff filed his notice of appeal.

¶ 17                           II. ANALYSIS

¶ 18      Plaintiff first argues that the trial court erred by dismissing his original complaint. Defendant argues that plaintiff is barred from appealing the trial court's dismissal of his original complaint, because plaintiff failed to reallege, refer to, incorporate, or preserve the alleged defamatory statements made prior to the November release. We agree with defendant.

¶ 19      It is a well-settled rule that a party who files amended pleadings forfeits any objection to the trial court's rulings on any former complaints. *Bonhomme v. St. James*, 2012 IL 112393, ¶ 23. This court has stated:

    "[F]ollowing entry of an order dismissing a complaint, if a party files an amended

complaint that is complete in itself and does not refer to or adopt the prior pleading, the party has [forfeited] any challenge to the order dismissing the prior complaint." *Gaylor v. Campion, Curran, Rausch, Gummerson & Dunlop, P.C.*, 2012 IL App (2d) 110718, ¶ 35 (citing *Foxcroft Townhome Owners Ass'n v. Hoffman Rosner Corp.*, 96 Ill. 2d 150, 154-55 (1983)).

To avoid forfeiture and preserve claims for appellate review, a party can: (1) stand on the dismissed counts, take a voluntary dismissal of any remaining counts, and argue the matter at the appellate level; (2) file an amended pleading that realleges, incorporates by reference, or refers to the dismissed counts; or (3) perfect an appeal from the dismissal order prior to filing an amended pleading that does not refer to or adopt the dismissed counts. *Id.* ¶ 36.

¶ 20    Plaintiff's first and second amended one-count complaints did not reallege, refer to, or adopt the previously dismissed original one-count complaint that the trial court dismissed as barred based on the November release. Plaintiff also did not stand on the dismissed original complaint or perfect an appeal from the dismissal order prior to filing his first and second one-count amended complaints. Therefore, plaintiff forfeited any challenge to the order dismissing his original complaint. See *id.* ¶ 38. Plaintiff in effect abandoned and withdrew his original complaint. See *id.*

¶ 21    Next, plaintiff argues that the trial court erred by dismissing his first amended complaint, because certain allegations contained in his first amended complaint related back to his original complaint. However, plaintiff's second amended complaint realleged only the four alleged defamatory statements alleged in paragraphs 15(a) and (b) and 17 (a) and (b) of plaintiff's first amended complaint. Plaintiff's second amended complaint did not reallege, refer to, or adopt the remaining alleged defamatory statements alleged in his first amended complaint. Plaintiff also did not stand on his first amended complaint or perfect an appeal from the dismissal order prior to filing his second amended complaint. Therefore, plaintiff forfeited any challenge to the order dismissing his first amended complaint as it related to the statements that he failed to reallege in his second amended complaint. See *id.*

¶ 22    Plaintiff argues that he did not forfeit his right to challenge the trial court's dismissal of his first amended complaint, because his second amended complaint realleged the dismissed defamation *per se* count, contained the same operative facts, and arose from the same incidents as his original complaint and the first amended complaint. Plaintiff erroneously believes that all he had to do was to restate the words "defamation *per se*" to avoid forfeiture of the allegations of the specific defamatory statements in his dismissed complaints. Plaintiff fails to understand that a complaint notifies a defendant of the alleged causes of action and of the theories of recovery. *Bonhomme*, 2012 IL 112393, ¶ 28. Thus, when a complaint is amended without reference to the earlier factual allegations, it is expected that these factual allegations are no longer at issue. *Foxcroft Townhome Owners Ass'n*, 96 Ill. 2d at 155. Because plaintiff failed to reallege each of the factual allegations he now raises, those factual allegations are not at issue on appeal. See *id.*

¶ 23    Plaintiff also argues that the trial court erred by dismissing his second amended complaint, because the trial court improperly determined that the alleged defamatory *per se* statements were capable of an innocent construction.

¶ 24     A section 2-615 motion to dismiss tests the legal sufficiency of the complaint. *Jacobsen v. King*, 2012 IL App (2d) 110721, ¶ 11. On review, the question is whether the allegations of the complaint, when construed in the light most favorable to the plaintiff, and taking all well-pleaded facts and all reasonable inferences that may be drawn from those facts as true, are sufficient to establish a cause of action upon which relief may be granted. *Napleton v. Village of Hinsdale*, 229 Ill. 2d 296, 305 (2008). The plaintiff must allege facts, not mere conclusions, to establish his claim as a viable cause of action. *Vernon v. Schuster*, 179 Ill. 2d 338, 344 (1997). A cause of action should not be dismissed pursuant to section 2-615 unless no set of facts can be proved that would entitle the plaintiff to recover. *Iseberg v. Gross*, 227 Ill. 2d 78, 86 (2007). We review *de novo* the trial court's dismissal of plaintiff's complaint. See *Vitro v. Mihelcic*, 209 Ill. 2d 76, 81 (2004).

¶ 25     "A defamatory statement is a statement that harms a person's reputation to the extent it lowers the person in the eyes of the community or deters the community from associating with her or him." *Green v. Rogers*, 234 Ill. 2d 478, 491 (2009). There are two types of defamatory statements: defamation *per se* and defamation *per quod*. *Tunca v. Painter*, 2012 IL App (1st) 093384, ¶ 40. In an action for defamation *per quod*, the plaintiff must plead and prove actual damages; whereas in an action for defamation *per se*, damages are presumed. *Imperial Apparel, Ltd. v. Cosmo's Designer Direct, Inc.*, 227 Ill. 2d 381, 390 (2008).

¶ 26     "A statement is defamatory *per se* if its harm is obvious and apparent on its face." *Green*, 234 Ill. 2d at 491. Illinois recognizes the following five categories of statements as defamation *per se*: (1) words that impute the commission of a crime; (2) words that impute an infection with a loathsome communicable disease; (3) words that impute an inability to perform or lack of integrity in performing employment duties; (4) words that prejudice a party or impute a lack of ability in a person's profession; and (5) words that impute that a person has engaged in adultery or fornication. *Id.* at 491-92.

¶ 27     To constitute defamation *per se* based on imputing the commission of a crime, the crime must be an indictable one, involving moral turpitude and punishable by death or imprisonment rather than by fine. *Moore v. People for the Ethical Treatment of Animals, Inc.*, 402 Ill. App. 3d 62, 69 (2010). The words do not need to meet the technical requirements necessary for an indictment. *Id.* However, the words must fairly impute the commission of a crime. *Id.*

¶ 28     The innocent construction rule applies in determining whether a statement alleged to be defamatory *per se* imputes the commission of a crime. *Id.* at 70. To determine whether a statement is capable of an innocent construction, a court must consider the statement in context and "give the words of the statement, and any implications arising from them, their natural and obvious meaning." *Green*, 234 Ill. 2d at 499. If the statement can be reasonably innocently interpreted, it cannot be actionable *per se*. *Solaia Technology, LLC v. Specialty Publishing Co.*, 221 Ill. 2d 558, 579 (2006). " 'There is no balancing of reasonable constructions ***.' " *Green*, 234 Ill. 2d at 500 (quoting *Mittelman v. Witous*, 135 Ill. 2d 220, 232 (1989)). In other words, if a statement is reasonably capable of a nondefamatory interpretation, given its context, it must be so interpreted. *Green*, 234 Ill. 2d at 500.

¶ 29     A person commits inducement to commit suicide when he or she, in pertinent part:

"(2) With knowledge that another person intends to commit or attempts to commit suicide, intentionally (i) offers and provides the physical means by which another person commits or attempts to commit suicide, or (ii) participates in a physical act by which another person commits or attempts to commit suicide." 720 ILCS 5/12-34.5(a)(2) (West 2010).

¶ 30    The basis of plaintiff's defamation *per se* claim is the statements, "Ask Marc Jacobson about Stuart's death, he helped him," and "Marc Jacobson helped Stuart kill himself." Plaintiff argues that the statements alleged are not capable of an innocent construction because the natural and obvious meaning of the word "help" is to assist with. Plaintiff supports his argument with the following definitions of "help": "to give assistance or support to" and "to further the advancement of." Merriam-Webster Online Dictionary, http://www.merriam-webster.com/dictionary/help (last visited Feb. 2, 2012). While plaintiff's interpretation might be reasonable, we must determine whether the statements can also be reasonably interpreted innocently. *Solaia Technology, LLC*, 221 Ill. 2d at 579. If so, the statements are not actionable *per se*. *Id.*

¶ 31    The statements defendant allegedly made are reasonably capable of an innocent construction. An innocent construction or nondefamatory interpretation is consistent with plaintiff's explanation of his behavior before and after Stuart's suicide. Plaintiff alleged that, just prior to Stuart's suicide, Stuart sent plaintiff a text message stating:

"I'm gonna be taking my life and I want you to take care of my family and notify them. *** You can come by way of the back door. I'm leaving it open. Thanks for everything. Bye."

Plaintiff also alleged the following. After plaintiff received Stuart's text message, plaintiff immediately left home and, "as instructed," entered Stuart's home through an unlocked door. Plaintiff found Stuart in a chair with a plastic bag wrapped around his head. Under the bag was a surgical-type mask with hoses that were attached to a helium tank. Plaintiff immediately pulled the bag off Stuart's head and called 911.

¶ 32    The statements that plaintiff "helped Stuart kill himself" and "helped him" can be reasonably interpreted to mean that plaintiff failed to call 911 or the police as soon as he received the message, allowing Stuart to complete the deed. Interpreted as such, these statements do not fairly impute the commission of a crime. Therefore, the alleged defamatory statements are reasonably capable of being interpreted in a nondefamatory manner. Accordingly, we must interpret them innocently. *Green*, 234 Ill. 2d at 500. Thus, the trial court properly dismissed plaintiff's second amended complaint.

¶ 33    Defendant also argues that the alleged defamatory statements are expressions of opinion and, therefore, are not actionable. Plaintiff argues that defendant has forfeited this argument because she failed to raise it in her motion to dismiss plaintiff's second amended complaint.

¶ 34    While an appellant who fails to raise an issue in the trial court forfeits that issue, an appellee may raise an issue on review that was not presented to the trial court in order to sustain the judgment, as long as the factual basis for the issue was before the trial court. *Olson v. Williams All Seasons Co.*, 2012 IL App (2d) 110818, ¶ 41. In this case, the record contains a factual basis for defendant's argument; the facts necessary to review this issue are

contained in plaintiff's second amended complaint. Thus, we will address the issue.

¶ 35    A statement that is otherwise defamatory is protected under the first amendment, if the statement is an expression of the speaker's opinion. *Tunca v. Painter*, 2012 IL App (1st) 093384, ¶ 43. Thus, "the first amendment prohibits defamation actions based on loose, figurative language that no reasonable person would believe presented facts." *Imperial Apparel, Ltd.*, 227 Ill. 2d at 397-98. To determine whether an alleged defamatory statement is protected under the first amendment, or whether it can be reasonably interpreted as stating actual facts, the emphasis is on whether it contains an objectively verifiable assertion. *Schivarelli v. CBS, Inc.*, 333 Ill. App. 3d 755, 760 (2002) (citing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19 (1990)). Whether a statement is of an opinion or a fact is a question of law. *Moriarty v. Greene*, 315 Ill. App. 3d 225, 234 (2000). Generally, where an alleged defamatory statement lacks a specific factual context, the statement is not objectively verifiable and is a nonactionable opinion. See, *e.g.*, *Schivarelli*, 333 Ill. App. 3d at 762; *Dubinsky v. United Airlines Master Executive Council*, 303 Ill. App. 3d 317, 330 (1999).

¶ 36    For example, in *Schivarelli*, a television commercial depicted an investigative reporter saying to the plaintiff, " 'Let's sum this up for a second, the evidence seems to indicate that you're cheating the city.' " *Schivarelli*, 333 Ill. App. 3d at 758. The ad did not provide any further detail, although the context of the ad "trumpet[ed the reporter's] ability to dig up hidden corruption, abuse, and unethical or illegal conduct." *Id.* at 760. The appellate court held that the statement was not objectively verifiable because it was not made in any specific factual context. *Id.* at 762. The appellate court reasoned that the reporter did not explain the evidence, state how the plaintiff was cheating or why she thought the plaintiff was cheating, or even explain what she meant by "cheating." *Id.* Therefore, the statement was not actionable. *Id.*

¶ 37    Similarly, in *Dubinsky*, the plaintiffs alleged that the defendants falsely accused the plaintiffs of criminal conduct related to the employee purchase of United Airlines. *Dubinsky*, 303 Ill. App. 3d at 322. Specifically, the plaintiff alleged that the defendant Richards defamed him by calling him a "crook" in front of 30 to 40 pilots and their wives. *Id.* The appellate court stated, "[o]ne cannot rely on an assumption that those who heard the statement were completely apprised of all the developments in the *** controversy so as to create a definitive factual context for the use of the word 'crook.' " *Id.* at 329-30. The court concluded that "this general statement, in the absence of factual context, is a statement of opinion, not objectively verifiable and devoid of factual content." *Id.* at 330.

¶ 38    In the present case, defendant's alleged statements, "[a]sk Marc Jacobson about Stuart's death, he helped him," and "Marc Jacobson helped Stuart kill himself," are not actionable because they were not made in any specific factual context. Plaintiff did not allege that defendant explained how plaintiff helped Stuart, why defendant thought plaintiff helped Stuart, what evidence defendant had that plaintiff helped Stuart, or even what defendant meant by the term "help." In the absence of any factual context, defendant's alleged statements were not actionable. See *Schivarelli*, 333 Ill. App. 3d at 762.

¶ 39                                    III. CONCLUSION

¶ 40        For the reasons stated, we affirm the trial court's dismissal of plaintiff's second amended complaint.

¶ 41        Affirmed.