NOTICE
Decision filed 05/21/20, corrected 05/26/20. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2020 IL App (5th) 190276

NO. 5-19-0276

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

DAVID H. HURSEY; ROBERT LISS; DONALD ) Appeal from the
SKELTON; CHRISTOPHER HURSEY; BLUE ) Circuit Court of
ORBIS CAPITAL ADVISORS, LLC; HLH, LLC; ) St. Clair County.
MULTIMODAL LOGISTICS MANAGEMENT, )
INC.; and MICHAEL HEAD, )
 )
    Plaintiffs, )
 )
v. ) No. 17-L-486
 )
BARRY CALHOUN; ROBERT GRANA; )
TIMOTHY DESSER; VISIONARY CAPITAL, )
LLC; BAYARD BUSINESS CAPITAL, INC.; )
and MARK XVI TRANSPORTATION )
SOLUTIONS, INC., )
 )
    Defendants )
 )
(David H. Hursey, Robert Liss, Donald Skelton, )
Christopher Hursey, and Michael Head, )
Plaintiffs-Appellants; Barry Calhoun, Bayard Business ) Honorable
Capital, Inc., and Mark XVI Transportation Solutions, ) Julie K. Katz,
Inc., Defendants-Appellees). ) Judge, presiding.

_____

JUSTICE BOIE delivered the judgment of the court, with opinion.
Justices Moore and Wharton concurred in the judgment and opinion.

**OPINION**

¶ 1    This is an interlocutory appeal pursuant to Illinois Supreme Court Rule 304(b)(5) (eff. Mar. 8, 2016) from an order finding plaintiffs David H. Hursey (D. Hursey), Robert Liss, Donald Skelton, Christopher Hursey (C. Hursey), and Michael Head, and their attorney, in contempt of court for refusing to comply with a discovery order. The discovery order at issue allowed

defendants Barry Calhoun and Bayard Business Capital, Inc. (Bayard) to conduct limited postjudgment discovery, including taking the depositions of the plaintiffs and their attorney, in connection with Calhoun and Bayard's pending motion for sanctions for the plaintiffs' filing of an alleged frivolous lawsuit.

¶ 2    The plaintiffs voluntarily dismissed Calhoun and Bayard from the lawsuit prior to the entry of a final judgment with respect to the claims against all named defendants. Prior to the entry of a final judgment on the remaining claims against other defendants, Calhoun and Bayard filed a motion for sanctions against the plaintiffs and their attorney[1] for filing claims against Calhoun and Bayard. The circuit court determined that an evidentiary hearing was required to adjudicate the motion and, over the plaintiffs' objection, granted Calhoun and Bayard leave to conduct limited discovery in connection with the pending motion. Another defendant in the lawsuit, Mark XVI Transportation Solutions, Inc. (Mark XVI), also filed a motion for sanctions against the plaintiffs and sought to participate in discovery. When the plaintiffs failed to appear for the court-ordered depositions, the circuit court held them in civil contempt and entered a judgment in favor of Bayard, Calhoun, and Mark XVI for attorney fees and costs associated with preparing for the depositions.

¶ 3    The plaintiffs now appeal the contempt ruling, arguing that the circuit court lacked authority to allow Calhoun, Bayard, and Mark XVI to conduct discovery in connection with the pending motions for sanctions. In addition, the plaintiffs argue that the fees and costs awarded were excessive. On appeal, Calhoun, Bayard, and Mark XVI request additional sanctions against the plaintiffs pursuant to Illinois Supreme Court Rule 375(b) (eff. Feb. 1, 1994) for bringing this

---

[1]For the sake of simplicity, when referring to the motion for sanctions, we will refer to the plaintiffs and their attorney as simply the plaintiffs.

appeal. For the following reasons, we affirm the circuit court's judgment, deny the Rule 375(b) request for sanctions on appeal, and remand for further proceedings on the motions for Rule 137 sanctions (Ill. S. Ct. R. 137 (eff. Jan. 1, 2018)) that are pending in the circuit court.

¶ 4                                    I. BACKGROUND

¶ 5     The motions for Rule 137 sanctions in this case stem from allegations made against Calhoun, Bayard, and Mark XVI in the plaintiffs' first amended complaint. Accordingly, our background discussion focuses primarily on the allegations in the first amended complaint.

¶ 6     D. Hursey, Liss, Skelton, and C. Hursey originally brought this lawsuit against Head and Mark XVI. Calhoun, Bayard, and another entity that is not a party to this appeal were named as respondents in discovery pursuant to section 2-402 of the Code of Civil Procedure (Code) (735 ILCS 5/2-402 (West 2016)) in the original complaint because they allegedly had "information essential to the determination of who should properly be named as additional defendants in the action."

¶ 7     Prior to the filing of the first amended complaint, the plaintiffs voluntarily dismissed Head from the lawsuit. Head then rejoined the lawsuit as a plaintiff in the first amended complaint. Also, in the first amended complaint, the plaintiffs named Mark XVI, Calhoun, Bayard, Robert Grana, Timothy Desser, and Visionary Capital, LLC (Visionary), as defendants. Only the claims against Calhoun, Bayard, and Mark XVI are relevant to this appeal. Accordingly, for the sake of simplicity, we will focus primarily on the those claims when discussing the proceedings leading up to the Rule 137 motions for sanctions at issue in this appeal.

¶ 8     The plaintiffs' claims against Calhoun, Bayard, and Mark XVI were based on allegations that the plaintiffs were shareholders of Mark XVI. Head was the CEO of Mark XVI and allegedly owned the only voting shares of stock in the company. The plaintiffs alleged that Mark XVI was

3

an international, third-party logistics company. They alleged that D. Hursey, Liss, Skelton, and C. Hursey were experienced in international logistics and were directly involved in Mark XVI's management and operations.[2]

¶ 9    The plaintiffs' first amended complaint alleges that D. Hursey, Liss, Skelton, and C. Hursey were being "stripped" of their ownership interest in Mark XVI by the defendants and that they faced "the imminent risk of losing 80% of their equity" in the company. The allegations stem from efforts by Head to secure financing for Mark XVI's operations. The plaintiffs alleged that, through Head, Mark XVI entered into an agreement with Bayard in which Bayard agreed to serve as a consultant for obtaining mezzanine financing and a new line of credit for Mark XVI. Calhoun was Bayard's director and the individual Head contacted at Bayard.

¶ 10    The plaintiffs alleged that Bayard and Calhoun sought to exploit Mark XVI for Calhoun's financial benefit. According to the plaintiffs' allegations, Calhoun proposed several financing opportunities that involved $2 million in debt to Mark XVI in exchange for an 85% equity ownership interest in the company. The plaintiffs alleged that Head rejected Calhoun's financing proposals and that Calhoun then attempted to orchestrate a "palace coup" with other individuals, the coup involving the removal of Head as Mark XVI's sole director, the appointment of others as new corporate leadership, the cancellation of the plaintiffs' consulting agreements with Mark XVI, and the termination of the plaintiffs' employment with Mark XVI.

---

[2]The plaintiffs' complaint alleged that D. Hursey was the managing member of plaintiff HLH, LLC (HLH); Liss was the president of plaintiff Multimodal Logistics Management, Inc. (Multimodal Logistics); and Skelton was the managing member of plaintiff Blue Orbis Capital Advisors, LLC (Blue Orbis Capital). The complaint alleged that HLH, Multimodal Logistics, and Blue Orbis Capital provided consulting services to Mark XVI pursuant to consulting agreements and that plaintiff C. Hursey provided services to Mark XVI pursuant to an employment agreement. HLH, Multimodal Logistics, and Blue Orbis Capital are not parties to this appeal.

4

¶ 11    The claims in the first amended complaint included the following. In counts I and II, D. Hursey, Liss, Skelton, and C. Hursey alleged claims against Mark XVI pursuant to Arizona statutes, requesting the court to compel the corporation to purchase their shares of stock and requesting an order directing Mark XVI to allow them to inspect and copy the corporation's records. In count III, D. Hursey, Liss, Skelton, and C. Hursey alleged claims against Grana and Desser for breach of fiduciary duties. In count IV, D. Hursey, Liss, Skelton, and C. Hursey alleged a claim against Bayard based on allegations that Bayard aided and abetted Grana's and Desser's breaches of their fiduciary duties.[3] In count V, Head alleged a claim against Calhoun on behalf of Mark XVI for tortious interference with an economic expectation. In count X, C. Hursey alleged a claim against Mark XVI for breach of contract.[4]

¶ 12    On February 27, 2018, Bayard and Calhoun filed a combined sections 2-615 and 2-619 (735 ILCS 5/2-615, 2-619 (West 2018)) motion to dismiss the amended complaint pursuant to section 2-619.1 of the Code (*id.* § 2-619.1). Calhoun and Bayard asserted in the motion that Mark XVI contracted with Bayard in February 2017 to help Mark XVI locate possible sources of capital. To facilitate this task, Calhoun had contact with Head and other members of Mark XVI's management team and received financial materials to assess Mark XVI's creditworthiness and to accurately disclose the company's financial condition to potential lenders. According to allegations in the motion to dismiss, Mark XVI provided this financial information pursuant to a "Mutual Nondisclosure and Confidentiality Agreement" (Confidentiality Agreement) signed by D. Hursey on behalf of Mark XVI.

---

[3]Visionary was also named as a defendant in the allegations of count IV. Visionary is not a party to this appeal.
[4]In count VI, Head alleged a claim against Desser and Grana on behalf of Mark XVI for intentional spoliation of evidence. Desser and Grana are not parties to this appeal. In counts VII, VII, and IX, HLH, Multimodal Logistics, and Blue Orbis Capital alleged claims against Mark XVI for breach of contract. As noted above, HLH, Multimodal Logistics, and Blue Orbis Capital are not parties to this appeal.

¶ 13    The motion to dismiss alleged that Bayard had discussions with several potential lenders but was unable to secure any financing. Calhoun and Bayard alleged in their motion that there were no possibilities for a capital infusion due to deficiencies in management, irregularities in the corporation's accountings, an illness suffered by Head, and marital discord between Head and his wife. Bayard and Calhoun then allegedly withdrew from their role in securing financing for Mark XVI in early September 2017.

¶ 14    Calhoun and Bayard alleged that Bayard's agreement with Mark XVI was established by an engagement letter that contained a forum selection provision in which the parties agreed to litigate any claims stemming from the agreement in St. Louis County, Missouri. In addition, Calhoun and Bayard alleged that the Confidentiality Agreement between Mark XVI and Bayard also contained a forum selection clause that provided the "exclusive forum and venue to all disputes shall be the state and federal courts having jurisdiction in Lancaster County, Nebraska." Therefore, Calhoun and Bayard maintained in their motion that the claims alleged against them in the first amended complaint had to be litigated in St. Louis County, Missouri, or in Lancaster County, Nebraska.

¶ 15    Calhoun and Bayard also alleged that the engagement letter signed by D. Hursey on behalf of Mark XVI included an agreement by Mark XVI to indemnify and hold Bayard and its officers and directors harmless from claims related to or arising from their agreement. Accordingly, Calhoun and Bayard concluded that the claims against them in the first amended complaint constituted "an exercise in futility."

¶ 16    On March 23, 2018, before the circuit court ruled on Calhoun and Bayard's motion to dismiss, the plaintiffs filed a motion to voluntarily dismiss the claims against Calhoun and Bayard without prejudice pursuant to section 2-1009 of the Code (735 ILCS 5/2-1009 (West 2018)). In

6

their motion, the plaintiffs referenced Calhoun and Bayard's motion to dismiss, in which Calhoun and Bayard invoked the "forum and indemnification provisions" in Mark XVI's agreement with Bayard. The plaintiffs requested dismissal of Calhoun and Bayard from the lawsuit without prejudice "[b]ased on the Retainer Agreement." On April 4, 2018, the circuit court entered an order dismissing Calhoun and Bayard from the proceedings without prejudice.

¶ 17    On April 18, 2018, Calhoun and Bayard filed the motion for sanctions against the plaintiffs pursuant to Illinois Supreme Court Rule 137 (eff. Jan. 1, 2018). This motion for sanctions lies at the heart of this appeal. Calhoun and Bayard alleged that the first amended complaint contained false and baseless allegations and that the plaintiffs and their attorneys failed to make any reasonable inquiry into the basis of those claims prior to signing and filing the first amended complaint. Specifically, Bayard and Calhoun alleged that the sanctionable allegations in the first amended complaint included (1) that "Calhoun stole tens of millions of dollars of revenues for himself and installed new leadership comprised of Robert Grana and Timothy Desser and disposed of the interests of other owners," (2) that "Calhoun participated in 'looting' Mark XVI and participated in destroying evidence and burning down a warehouse to further destroy evidence," (3) that "Mark XVI was worth over $17.5 million dollars," (4) that "[o]ver 1.3 million was stolen from Mark XVI and/or its subsidiary [Multimodal Logistics] via a wire transfer and sent to an off-shore account," (5) that there "were multiple financing offers made to Mark XVI but Calhoun refused to pursue such deals unless he was given an ownership interest in Mark XVI," and (6) that Calhoun orchestrated a " 'palace coup' to install new leadership in Mark XVI."

¶ 18    Calhoun and Bayard alleged that the above allegations were untrue, were made with disregard for whether they were true or false, and constituted a violation of Rule 137. Calhoun and Bayard argued that, before the plaintiffs filed their lawsuit, the plaintiffs and their attorneys could

7

have discovered that there never were any financing offers, that Calhoun never desired or requested any equity stake in Mark XVI, that there was no theft or evidence of theft of any of the corporation's funds, that the plaintiffs' claimed valuation of Mark XVI was highly implausible, that there was no evidence that Calhoun was involved with any warehouse fire, and that the "notion of a palace coup is a complete farce."

¶ 19    Calhoun and Bayard alleged that Calhoun "never stole anything from Mark XVI, never destroyed any evidence, never wanted or asked for an ownership interest in Mark XVI, never held any financing deals hostage because there never were any financing offers in the first place, and never participated in what had dubiously been described as a 'palace coup.' " In addition, they alleged that "[t]here has never been any evidence of any of the foregoing."

¶ 20    Calhoun and Bayard alleged that the plaintiffs and their attorneys violated Rule 137 by signing and filing the first amended complaint and causing them to incur thousands of dollars in attorney fees. Calhoun and Bayard alleged that their attorney "turned over hundreds of documents he was under no obligation to produce in the hopes that taking an open book approach might convince [the plaintiffs' attorney] and his clients to reconsider their frivolous allegations." They asked the court to order the plaintiffs to reimburse them for their attorney fees in defending the lawsuit and in bringing the motion for sanctions.

¶ 21    The plaintiffs filed a motion to strike Calhoun and Bayard's request for sanctions. The plaintiffs alleged in the motion to strike that Calhoun and Bayard were voluntarily dismissed from the lawsuit without prejudice within days of their counsel "producing a signed contract setting forum in another jurisdiction and providing indemnity for [Bayard]." They further alleged that the contract was not shared with plaintiffs' counsel at any time earlier in the litigation, including in response to the plaintiffs' discovery requests prior to the filing of the first amended complaint.

8

¶ 22    The plaintiffs argued that the allegations pled in the first amended complaint were well founded in fact and that Calhoun and Bayard were not able to produce any affirmative evidence to contradict the first amended complaint's allegations other than their own assertions. They maintained that there were numerous factual questions and that they made "a good faith effort to get to the bottom of the factual morass," including attempting extensive discovery and naming Calhoun and Bayard as defendants in discovery. The plaintiffs argued that "all discovery attempts were thwarted," resulting in the first amended complaint "being filed in a vacuum based on the Plaintiffs' verified averments."

¶ 23    The plaintiffs asked the court to dismiss the request for sanctions with prejudice "[r]ather than litigate these factual questions *that would require discovery* and a lengthy hearing." (Emphasis added.) They argued that if any party had demonstrated bad faith, it was "Calhoun and his counsel who did not produce the ultimately dispositive documents until they were attached to its Motion to Dismiss after both sides incurred attorneys' fees."

¶ 24    In their reply, Calhoun and Bayard maintained that there were

> "numerous third parties who would have been able to refute the allegations in the first amended complaint, such as employees of the bank from which funds were purportedly stolen, or employees for the financiers who purportedly were deterred from investing in Mark XVI due to Calhoun's insistence on an ownership share."

Calhoun and Bayard argued that the "total lack of written corroboration for any of these claims, when at least some evidence would be expected to be in Plaintiffs' possession, should have spurred a reasonable lawyer to conduct some further investigation." They asked the court to grant their request for sanctions "outright." They noted that, alternatively, if the court concluded that a hearing was necessary, they would "seek to question the individual plaintiffs, [their attorney], and other

9

witnesses having knowledge of the facts alleged in the first amended complaint concerning the bases for their allegations."

¶ 25 Meanwhile, the circuit court granted a motion to dismiss the remaining counts in the first amended complaint against the remaining defendants, including Mark XVI. The plaintiffs, therefore, filed a second amended complaint. There were no claims in the second amended complaint alleged against Calhoun or Bayard.

¶ 26 On June 5, 2018, the circuit court denied the plaintiffs' motion to strike Calhoun and Bayard's motion for sanctions, finding that the motion for sanctions was "sufficient to state a cause of action." The court directed the parties to "submit a proposed briefing schedule" and stated that it would "determine whether further argument and/or briefing [would be] required after reviewing the parties' briefs."

¶ 27 The plaintiffs then filed a response to the motion for sanctions, in which they argued that they had evidence supporting the six factual averments that Calhoun and Bayard challenged in the motion for sanctions. The plaintiffs maintained that Calhoun and Bayard could not meet "the threshold requirement of showing that those averments were false." In addition, the plaintiffs maintained that Calhoun and Bayard engaged in a pattern of interference with the plaintiffs' attempt to investigate the factual averments in the complaint.

¶ 28 First, the plaintiffs addressed Calhoun and Bayard's assertion that they were falsely accused of destroying evidence. The plaintiffs stated that 60 hard drives were erased and that an office used for Mark XVI's operations burned down. The plaintiffs maintained that the facts supported an inference that this destruction of data was intentional and that the persons who benefited from the destruction were likely responsible. The plaintiffs concluded, "No more is required at this state of litigation to support the averments in a complaint." Nonetheless, the

plaintiffs argued, the first amended complaint did not aver that either Calhoun or Bayard were responsible, only that the group who benefited from the destruction was likely responsible and that the plaintiffs had not been able to complete discovery to determine which of those persons were actually responsible.

¶ 29 Second, the plaintiffs noted that Calhoun and Bayard took issue with the allegation that, prior to the plaintiffs' removal from Mark XVI, the corporation had a market value of approximately $17.5 million. The plaintiffs argued that Calhoun and Bayard had the burden of proving that the valuation was wrong and that Calhoun and Bayard's opinion that the valuation was "implausible" does not establish that the averment was a basis for Rule 137 sanctions. The plaintiffs also attached to their response a third-party evaluation that Mark XVI had a market value of $17.5 million.

¶ 30 Third, the plaintiffs noted that Calhoun and Bayard challenged the allegation in the first amended complaint that "in excess of $1,300,000 was wired from accounts held by Mark XVI *** to off-shore bank accounts." The plaintiffs argued that Calhoun and Bayard made no attempt to prove that the allegation was untrue and noted that the averment did not mention Calhoun or Bayard in connection with wiring money out of Mark XVI's account. In addition, the plaintiffs maintained that they had a reasonable basis for the allegation, in that an IT provider who had "read-access" to Mark XVI's accounts informed D. Hursey that there had been dozens of withdrawals from the company's accounts and deposited to an account in Oman or a bank in Texas. The plaintiffs acknowledged that there was no direct evidence concerning the exact amount taken by any of the defendants or how the money was divided among the defendants but argued that whether the amount taken was $1.3 million or tens of millions and whether Calhoun and Bayard merely

abetted the theft or actually kept a portion was immaterial, particularly when Calhoun and Bayard "stonewalled" the plaintiffs' discovery efforts prior to the filing of the first amended complaint.

¶ 31    Fourth, the plaintiffs noted that Calhoun and Bayard took issue with the allegation that they orchestrated the plaintiffs' ouster as Mark XVI's officers and directors. The plaintiffs responded that at a July 5, 2017, meeting, Calhoun stated that the plaintiffs should be removed from their positions with Mark XVI and replaced. The plaintiffs described a sequence of events that occurred after the meeting that resulted in their removal from their corporate offices. They concluded that, based on the sequence of events, there was a reasonable inference that Calhoun "formulated and help execute [the plaintiffs'] dismissal from their positions."

¶ 32    Fifth, the plaintiffs noted that Calhoun and Bayard took issue with the plaintiffs' allegation that Calhoun refused to pursue various financing offers made to Mark XVI unless he was given an ownership interest in the corporation. The plaintiffs responded that Head had given a sworn statement indicating that, prior to the plaintiffs' removal from their corporate positions, Calhoun demanded an ownership interest in Mark XVI.

¶ 33    Sixth, the plaintiffs noted that Calhoun and Bayard took issue with the plaintiffs' allegation that Calhoun and Bayard exploited Mark XVI's vulnerability to take millions of dollars for their own benefit and to install new corporate leadership. In their response, the plaintiffs argued that there was evidence to support the conclusion that Calhoun and Bayard exploited Mark XVI's "desperate need for a cash infusing" and that Calhoun and Bayard were instrumental in engineering the plaintiffs' removal from their corporate positions.

¶ 34    The plaintiffs also argued that Calhoun and Bayard breached a discovery agreement that necessitated the filing of the first amended complaint. The plaintiffs argued that they sought discovery before naming Calhoun and Bayard as defendants in order to determine whether to let

Calhoun and Bayard out of the case or add them as defendants. According to the plaintiffs, counsel for Calhoun and Bayard agreed that they would comply with the plaintiffs' discovery requests but then moved to quash the discovery. The plaintiffs alleged that Calhoun and Bayard did not produce any documents until after the filing of the first amended complaint. The plaintiffs alleged that they ultimately dismissed Calhoun and Bayard from the case, not because Calhoun and Bayard controverted the plaintiffs' factual allegations, but because the indemnity agreement in the contract between Bayard and Mark XVI made pursuing a lawsuit against Calhoun and Bayard illogical. The plaintiffs stated that they dismissed Calhoun and Bayard from the lawsuit within four days after learning of the terms of the agreement.

¶ 35    In their reply, Calhoun and Bayard again asked the court to grant their request for sanctions or, alternatively, "afford them the opportunity to take limited discovery in advance" of an evidentiary hearing on their request. On July 25, 2018, Mark XVI filed its own motion for sanctions against the plaintiffs pursuant to Rule 137. In its motion, Mark XVI argued that the plaintiffs' complaint and amended complaints "alleged numerous contrasting, conflicting statements and outright falsehoods" in violation of Rule 137 and were used only to harass Mark XVI.

¶ 36    On August 8, 2018, Calhoun and Bayard filed a motion requesting permission to conduct discovery relevant to their pending motion for sanctions. They argued that they "would like to conduct oral discovery of several of the parties and [the plaintiffs' attorney] in order to determine the extent to which they deviated from the requirements of Rule 137 in making their allegations." The plaintiffs objected to the motion, arguing that the circuit court lacked "authority to allow a non-party to take discovery" with respect to a request for Rule 137 sanctions.

¶ 37     On August 20, 2018, the circuit court entered an order granting Calhoun and Bayard's motion for leave to take discovery.[5] The plaintiffs filed a motion asking the circuit court to make a finding pursuant to Illinois Supreme Court Rule 308 (eff. July 1, 2017) that (1) the August 20, 2018, discovery order, allowing Calhoun and Bayard to conduct discovery, involved a question of law in which there was a substantial ground for difference of opinion and (2) an immediate appeal from the order may materially advance the ultimate termination of the litigation. The plaintiffs also asked, alternatively, that the circuit court find, pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016), that there was no just reason for delaying either the enforcement or appeal of the August 20, 2018, order or both.[6] On November 2, 2018, the circuit court denied the plaintiffs' motion.

¶ 38     Calhoun and Bayard subsequently issued subpoenas and deposition notices to each plaintiff and two of their attorneys. The plaintiffs and the attorneys indicated that they would refuse to appear for the depositions. The plaintiffs then filed a motion, asking for the circuit court to find them in civil contempt, fine them a nominal fee, and stay discovery pending appellate resolution of the contempt order and resolution of the plaintiffs' underlying objections to the discovery requests. The circuit court denied the motion on the basis that it was premature.

¶ 39     When the plaintiffs subsequently failed to appear for their scheduled depositions, Calhoun and Bayard filed a motion for discovery sanctions pursuant to Illinois Supreme Court Rule 219 (eff. July 1, 2002). Calhoun and Bayard requested expenses and attorney fees incurred in preparing and serving subpoenas and in preparing deposition notices and court appearances. The plaintiffs

---

[5]The court also dismissed the second amended complaint with prejudice.
[6]The plaintiffs also requested findings that would allow them to file an interlocutory appeal of the dismissal of the second amended complaint with prejudice.

14

then filed another motion requesting the circuit court to enter an order for civil contempt and a nominal fine so they could contest the underlying discovery order on appeal.

¶ 40 On January 30, 2019, the circuit court entered an order awarding Calhoun and Bayard "out of pocket expenses in the amount of $213.13" and reserved ruling on Calhoun and Bayard's request for attorney fees stemming from the subpoena and depositions. The circuit court stated that the amount of the attorney fees claimed for the discovery violation "will be reasonable as part of fees to be awarded in regard to ruling on Bayard and Calhoun's Rule 137 motion." The circuit court ordered D. Hursey and the plaintiffs' attorney to appear for depositions on February 13, 2019. On February 14, 2019, Calhoun and Bayard filed another motion for sanctions pursuant to Rule 219 due to the failure of D. Hursey and the plaintiffs' attorney to appear for the scheduled deposition. Mark XVI also filed a motion for discovery sanctions pursuant to Rule 219.

¶ 41 On March 25, 2019, the circuit court entered an order finding the plaintiffs in contempt of court. The court directed Calhoun and Bayard to submit proof of their "cost and fees." On April 4, 2019, the circuit court entered a judgment on the contempt finding. The circuit court stated in the judgment that the plaintiffs[7] were in contempt of the court for failure to obey its orders, including failure to appear for depositions as ordered and failure to pay Rule 219 sanctions as ordered. The court stated that the plaintiffs "will be fined in an amount equal to the expenses incurred by Bayard, Calhoun[,] and Mark XVI relating to the aborted depositions, Rule 219 sanctions motions[,] and contempt proceedings." The court directed Calhoun, Bayard, and Mark XVI to submit an itemization of their fees and expenses.

---

[7]The judgment does not include any findings of contempt against HLH, Multimodal Logistics, or Blue Orbis Capital.

15

¶ 42    Calhoun and Bayard's attorneys submitted attorney fee affidavits establishing their attorney fees and costs incurred in connection with the preparation and service of subpoenas, the preparation for the scheduling of the depositions, and the addressing of plaintiffs' motion for an order of civil contempt. The affidavits included monthly attorney fee invoices. The affidavits alleged that Calhoun and Bayard incurred a total of $16,766 in attorney fees and $418.01 in expenses related to their attempts at discovery. Mark XVI submitted an attorney fee affidavit that requested $9505.56 in attorney fees and $106.56 in expenses.

¶ 43    The plaintiffs object to the fee petitions of Calhoun, Bayard, and Mark XVI, arguing that the attorneys failed to carry their burden of proving that the fees were reasonable and that the court should carefully review and reduce the fee petitions because the petitions were vague and inadequately documented. On June 6, 2019, the circuit court entered an order awarding Mark XVI $9379.56 in attorney fees and costs and awarding Calhoun and Bayard $9346.88 in attorney fees and costs. The plaintiffs now appeal the circuit court's judgment holding them in contempt and awarding attorney fees and costs.

¶ 44                                        II. ANALYSIS

¶ 45    On appeal, the plaintiffs first argue that the circuit court erred in allowing Calhoun and Bayard to conduct discovery because they are nonparties. The plaintiffs maintain that Illinois Supreme Court Rule 201(b) (eff. July 1, 2014) and sections 2-401(a) and (d) of the Code (735 ILCS 5/2-401(a), (d) (West 2018)) do not authorize nonparties to depose the plaintiffs and their counsel.

¶ 46                                    A. Standard of Review

¶ 47    This issue is presented to us on an appeal from an order finding the plaintiffs in contempt of court for refusing to obey the circuit court's order that they appear for discovery depositions in

16

connection with Calhoun and Bayard's pending motion for sanctions. The circuit court found the plaintiffs in civil contempt for their refusal to appear for depositions as ordered. A civil contempt order is intended to compel the contemnor to perform a particular act. *People v. Johnson*, 2017 IL App (1st) 162876, ¶ 15. Our supreme court has previously indicated that "whether a party is guilty of contempt is a question of fact for the trial court, and *** a reviewing court will not disturb the finding unless it is against the manifest weight of the evidence or the record reflects an abuse of discretion." *In re Marriage of Logston*, 103 Ill. 2d 266, 286-87 (1984).

¶ 48     Here, however, the sole issue raised in challenging the circuit court's contempt order is whether the circuit court had authority under supreme court rules and/or the Code to allow Calhoun and Bayard to conduct discovery in connection with their pending motion for sanctions. When a party appeals contempt sanctions imposed for violating a discovery order, that discovery order is subject to review. *Almgren v. Rush-Presbyterian-St. Luke's Medical Center*, 162 Ill. 2d 205, 216 (1994). In the present case, addressing the plaintiffs' argument requires us to interpret the language of the Code and the supreme court rules. This task presents us with a question of law that we review *de novo*. *People v. Marker*, 233 Ill. 2d 158, 162 (2009); *Medical Alliances, LLC v. Health Care Service Corp.*, 371 Ill. App. 3d 755, 756-57 (2007) ("[T]he construction of a supreme court rule presents a question of law that we consider *de novo*."); *In re Marriage of Milne*, 2018 IL App (2d) 180091, ¶ 25 ("We review *de novo* questions of statutory construction ***.").

¶ 49     Calhoun, Bayard, and Mark XVI argue that the issue should be reviewed under the abuse of discretion standard because a circuit court has broad discretion in ruling on discovery matters. We disagree because, initially, before we analyze whether the circuit court abused its discretion, we must first determine, as a matter of law, whether the court had discretion to allow a party dismissed from a case to conduct postjudgment discovery in connection with a pending request for

17

Rule 137 sanctions. We will review this initial question concerning the existence of the circuit court's authority to exercise discretion under the *de novo* standard of review.

¶ 50              B. Postjudgment Discovery on Rule 137 Motions for Sanctions

¶ 51     The plaintiffs maintain that there is no authority in the Code or in supreme court rules that authorizes the circuit court to allow discovery on Calhoun and Bayard's and Mark XVI's pending Rule 137 motions for sanctions because Calhoun, Bayard, and Mark XVI are no longer parties to the lawsuit after their dismissal from the lawsuit.

¶ 52     Turning to the statutory and rule language raised by the plaintiffs, sections 2-401(a) and (d) of the Code provide as follows:

> "(a) The party commencing an action shall be called the plaintiff. The adverse party shall be called the defendant.
>
>                            * * *
>
>      (d) Unless a contrary meaning is indicated, wherever used in this Act and in rules adopted pursuant hereto the term 'plaintiff' includes counterclaimants and third-party plaintiffs, and the term 'defendant' includes third-party defendants and parties against whom relief is sought by counterclaim." 735 ILCS 5/2-401(a), (d) (West 2018).

¶ 53     Next, Illinois Supreme Court Rule 201(b)(1) provides:

> "Except as provided in these rules, *a party* may obtain by discovery full disclosure regarding any matter relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking disclosure or of any other party, including the existence, description, nature, custody, condition, and location of any documents or tangible things, and the identity and location of persons having knowledge of relevant facts." (Emphasis added.) Ill. S. Ct. R. 201(b)(1) (eff. July 1, 2014).

18

¶ 54　We note that the plaintiffs do not dispute that the circuit court has authority to conduct an evidentiary hearing on Calhoun and Bayard's and Mark XVI's pending motions for sanctions. See *Hess v. Loyd*, 2012 IL App (5th) 090059, ¶ 26 ("A hearing is necessary for a trial court to determine if any untrue statement within a pleading was made without reasonable cause, unless the court's determination can be made on the basis of the pleadings or trial evidence."). In the present case, the circuit court determined, and we agree, that the Rule 137 motion raises factual issues that must be resolved in order for the circuit court to adjudicate the merits of the motion. The circuit court specifically observed that "an evidentiary hearing is needed in order to assess what the Plaintiffs' motives were for filing the pleadings herein."

¶ 55　The parties' dispute centers on whether the circuit court has discretion to allow limited discovery prior to the evidentiary hearing. The plaintiffs argue that the clear and unambiguous language of the supreme court rules and the Code cited above establishes that the right to discovery is limited to a "party." They maintain that there is no provision in the supreme court rules or the Code that empowers the circuit court to exercise its discretion to allow a nonparty to take discovery of a party or a party's counsel. The plaintiffs conclude that Calhoun and Bayard were no longer parties to the action once they were voluntarily dismissed from the action and, therefore, have no right to conduct discovery. They also argue that Mark XVI was no longer a party and cannot participate in the discovery after the circuit court granted Mark XVI's motion to dismiss the second amended complaint with prejudice.

¶ 56　The circuit court disagreed with the plaintiffs' argument that Calhoun, Bayard, and Mark XVI were no longer "parties" to the proceeding once the claims against them were dismissed.[8] In

---

[8]The circuit court's order mentions only Calhoun and Bayard, but its reasoning applies equally to Mark XVI.

rejecting this argument, the circuit court noted that Rule 137 provides that motions for sanctions "must be filed within 30 days of the entry of final judgment, or if a timely post-judgment motion is filed, within 30 days of the ruling on the post-judgment motion." Ill. S. Ct. R. 137(b) (eff. Jan. 1, 2018). The circuit court then reasoned as follows:

> "[Calhoun and Byard] were clearly parties when they filed the Motion for Sanctions, in that the Motion was filed within 30 days of their dismissal from the case. Clearly litigants in a case continue to be deemed as 'parties' within the 30 day period following entry of a final Order; otherwise, there would be no authority to file a post-trial motion if a litigant were deemed to be a non-party at the exact moment he or she is dismissed from a case. If the Defendants were still considered to be 'parties' at the time they filed the Motion for Sanctions, they certainly remain in that status until the Motion for Sanctions is resolved."

¶ 57    We agree with the circuit court's reasoning. As the circuit court observed, it is undisputed that the motions were timely filed within the 30-day time period required by the rule. We agree with the circuit court that parties that have been dismissed from a case maintain their status as parties to the proceedings while timely filed postjudgment motions are pending in the case, including motions for sanctions. Rule 137 gives defendants that have been dismissed from a case 30 days to file a motion for sanctions after the entry of a final judgment, not 30 days from their dismissal. Parties who have been dismissed from a lawsuit and who timely file motions pursuant to Rule 137 are still parties to the proceedings while their motions are pending.

¶ 58    As Calhoun, Bayard, and Mark XVI argue in their briefs, the supreme court has held that, in substance, the filing of a Rule 137 motion for sanctions "is the functional equivalent of adding an additional count to a complaint, or counter-claim, depending on which party files the motion." *John G. Phillips & Associates v. Brown*, 197 Ill. 2d 337, 340 (2001). In *Brown*, the court noted

20

that Rule 137 "permits *parties* to request sanctions for improper filings." (Emphasis added.) *Id.* at 339. The court held that a motion for sanctions under Rule 137 is a "claim," and because a notice of appeal cannot be filed before the circuit court has disposed of all claims, a notice of appeal cannot be filed before the circuit court has ruled on all pending Rule 137 motions. "A claim brought pursuant to Rule 137 is part of the civil action that gave rise to the claim" and is "part of the underlying action." *Peabody Coal Co. v. Industrial Comm'n*, 307 Ill. App. 3d 393, 395-96 (1999).

¶ 59 Because the supreme court considers a pending motion for sanctions as the substantive equivalent of a pending "claim" in the underlying action, the logical conclusion is that the circuit court has discretion to allow discovery related to this "claim," so that the party seeking sanctions can obtain full disclosure of matters relevant to the pending motion. This is particularly true in cases, such as the case here, where the circuit court has determined that an evidentiary hearing is necessary to adjudicate the claim.

¶ 60 The "claim" in Rule 137 motions concerns the propriety of the pleadings in the underlying action. A defendant dismissed prior to the entry of a final judgment might not have access to all evidentiary matters relevant to a claim for sanctions without discovery. Any party opposing sanctions can always object to the request for discovery, and if an objection to discovery is raised, the extent to which discovery should be allowed is a matter that lies squarely within the circuit court's discretion. "[T]he prevailing standard with regard to pretrial and posttrial discovery requests both in Illinois and other jurisdictions is that the trial court has the discretionary power to grant or deny such requests." *Shapo v. Tires 'N Tracks, Inc.*, 336 Ill. App. 3d 387, 398 (2002).

¶ 61 Illinois supreme court rules allow for broad discovery regarding any matter relevant to the subject matter involved in the pending action. Ill. S. Ct. R. 201(b)(1) (eff. July 1, 2014); *Shamrock Chicago Corp. v. Wroblewski*, 2019 IL App (1st) 182354, ¶ 40. The purpose of the discovery rules

21

is "to be flexible and adaptable to the infinite variety of cases and circumstances appearing before the trial court." *Doe 1 v. Board of Education of the City of Chicago*, 2017 IL App (1st) 150109, ¶ 16. As the circuit court observed in the present case, "[c]learly parties are entitled to discovery before proceeding to trial on an issue." We agree. Accordingly, we hold that a circuit court has discretion to allow postjudgment discovery in connection with pending motions for Rule 137 sanctions. See also *Bangaly v. Baggiani*, 2014 IL App (1st) 123760, ¶ 130 (finding that a trial court did not abuse its discretion in allowing posttrial discovery); *People v. B.R. MacKay & Sons, Inc.*, 141 Ill. App. 3d 137, 141 (1986) (the supreme court has "held *sub silentio* that discovery may be used in a post-judgment setting" (citing *Gatto v. Walgreen Drug Co.*, 61 Ill. 2d 513 (1975))).

¶ 62     Having determined that the circuit court in the present case has discretion to allow Calhoun, Bayard, and Mark XVI to conduct discovery pertaining to their pending motions for sanctions, we need not conduct further analysis to determine whether the circuit court abused its discretion in this case in allowing the discovery. The plaintiffs have not challenged the circuit court's exercise of discretion as an alternative argument. They have argued only that the circuit court lacked authority to exercise any discretion, and we have rejected that argument.

¶ 63     Nonetheless, we again note that the circuit court determined that an evidentiary hearing was required on the motions for sanctions because the motions raised factual issues related to, among other things, what the plaintiffs and their counsel knew or should have known upon reasonable inquiry prior to filing the first amended complaint. A circuit court will normally be well within its broad discretionary authority when it allows parties to conduct discovery related to a claim that requires an evidentiary hearing to adjudicate.

¶ 64                    C. Circuit Court's Fine for Indirect Civil Contempt

¶ 65    Next, the plaintiffs argue that the penalty assessed by the circuit court was excessive. They argue that their refusal to appear for depositions was motivated by a "genuine held belief that such discovery is unwarranted by Supreme Court Rules 201-217 and [the Code]." In addition, they argue that the amount awarded was excessive because they informed Calhoun, Bayard, and Mark XVI well in advance of the depositions that they intended to challenge the circuit court's discovery order and would not appear for any depositions. They argue, therefore, that any fees or expenses incurred in preparing for the depositions should not have been awarded because those fees and expenses were needless and unnecessary. We disagree with the plaintiffs' argument.

¶ 66    Illinois Supreme Court Rule 219(c) (eff. July 1, 2002) provides that if a party unreasonably fails to comply with discovery or fails to comply with a discovery order,

> "the court, upon motion or upon its own initiative, may impose upon the offending party or his or her attorney, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of reasonable expenses incurred as a result of the misconduct, including a reasonable attorney fee."

Here, the circuit court initially imposed a fine pursuant to Rule 219(c) when the plaintiffs failed to appear for scheduled depositions. The court then ordered D. Hursey and the plaintiffs' attorney to appear for depositions at a specified time and place. When they again failed to appear, the circuit court, after a hearing, found the plaintiffs in civil contempt for their refusal to comply with its discovery order, and awarded attorney fees and costs as a fine.

¶ 67    Civil contempt generally occurs when a party fails to do something ordered by the circuit court, resulting in the loss of a benefit or advantage to the opposing party. *In re Marriage of Tatham*, 293 Ill. App. 3d 471, 479 (1997). Contempt that occurs outside of the presence of the trial

23

court is classified as indirect contempt. *Id.* at 480. The existence of an order of the circuit court and proof of willful disobedience of that order are essential to any finding of indirect civil contempt. *Id.*

¶ 68    The procedure for establishing indirect civil contempt initially begins with the petitioner proving by a preponderance of the evidence that the contemnor has violated a circuit court's order. *In re Marriage of LaTour*, 241 Ill. App. 3d 500, 508 (1993). If the petitioner meets his or her burden, the burden shifts to the contemnor to show that noncompliance with the circuit court's order was not willful or contumacious and that he or she had a valid excuse for failure to follow the circuit court order. *Tatham*, 293 Ill. App. 3d at 480. "Contumacious conduct consists of 'conduct calculated to embarrass, hinder, or obstruct a court in its administration of justice or lessening the authority and dignity of the court.' " *In re Marriage of Charous*, 368 Ill. App. 3d 99, 108 (2006) (quoting *In re Marriage of Fuesting*, 228 Ill. App. 3d 339, 349 (1992)).

¶ 69    Whether a party is guilty of indirect civil contempt is a question for the trial court, and its decision will not be disturbed on appeal unless it is against the manifest weight of the evidence or the record reflects an abuse of discretion. *Logston*, 103 Ill. 2d at 286-87. "A decision is against the manifest weight of the evidence where the opposite conclusion is clearly evident or where the court's findings are unreasonable, arbitrary, and not based on any of the evidence." (Internal quotation marks omitted.) *In re Marriage of Demaret*, 2012 IL App (1st) 111916, ¶ 43.

¶ 70    In the present case, we cannot conclude that the circuit court's contempt judgment was against the manifest weight of the evidence. When the circuit court initially granted Calhoun and Bayard's request to conduct discovery, over the plaintiffs' objection, the plaintiffs requested the circuit court to certify a question under Rule 308 for an immediate appeal of the issue of whether the circuit court had authority to allow the discovery. Alternatively, the plaintiffs asked the circuit

court to make the findings pursuant to Rule 304(a), which would allow the immediate appeal of the discovery order. After hearing arguments from the attorneys, the circuit court denied the plaintiffs' requests for these findings. The circuit court entered a detailed, nine-page order explaining the grounds for denying the requests. The plaintiffs then made two additional requests that the circuit court enter a "friendly" contempt order with a nominal fine that would allow them to appeal the issue. Again, the court declined the requests. The circuit court, therefore, made it clear to the plaintiffs that it expected discovery on the pending motions for Rule 137 sanctions to move forward. Despite these rulings, the plaintiffs continued their refusal to comply with the circuit court's discovery order.

¶ 71       Under these facts, we will not second-guess the circuit court's decision to find the plaintiffs in contempt and to award, as a fine, the fees incurred by Calhoun, Bayard, and Mark XVI in preparing for the depositions. The plaintiffs were on notice that the circuit court required compliance with its order, and Calhoun, Bayard, and Mark XVI were obligated to prepare to take depositions on the date ordered by the circuit court.

¶ 72       The plaintiffs argue that the fees and costs awarded by the circuit court were excessive, but the circuit court carefully reviewed Calhoun and Bayard's and Mark XVI's fee requests stemming from the plaintiffs' failure to comply with discovery order. The circuit court did not award the fees and costs wholesale but engaged in a careful analysis and ultimately declined to award a portion of the requested fees. Again, in a detailed order, the circuit court identified specific time entries on specific dates that it found to be related to the discovery dispute. The circuit court also identified time entries involving two attorneys from two law firms handling the same task and excluded duplicative fees for those services.

¶ 73 A circuit court has broad discretion to award attorney fees, and its decision will not be reversed on appeal unless the court abused that discretion. *Pietrzyk v. Oak Lawn Pavilion, Inc.*, 329 Ill. App. 3d 1043, 1046 (2002). Here, the record is more than adequate to support the circuit court's determination concerning the amount of reasonable attorney fees and expenses to award as a fine for the plaintiffs' indirect contempt of court. We will not disturb the circuit court's exercise of its discretion based on the record before us.

¶ 74 D. Appellees' Request for Rule 375(b) Sanctions on Appeal

¶ 75 On appeal, Calhoun, Bayard, and Mark XVI have requested additional sanctions against the plaintiffs pursuant to Illinois Supreme Court Rule 375(b) (eff. Feb. 1, 1994). Rule 375(b) authorizes sanctions for appeals that are frivolous, not taken in good faith, or for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

¶ 76 Specifically, Rule 375(b) provides:

"If, after consideration of an appeal or other action pursued in a reviewing court, it is determined that the appeal or other action itself is frivolous, or that an appeal or other action was not taken in good faith, for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation, or the manner of prosecuting or defending the appeal or other action is for such purpose, an appropriate sanction may be imposed upon any party or the attorney or attorneys of the party or parties. An appeal or other action will be deemed frivolous where it is not reasonably well grounded in fact and not warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law. An appeal or other action will be deemed to have been taken or prosecuted for an improper purpose where the primary purpose of the appeal

26

or other action is to delay, harass, or cause needless expense." Ill. S. Ct. R. 375(b) (eff. Feb. 1, 1994).

¶ 77    Reviewing courts apply an objective standard to determine whether an appeal is frivolous. An appeal "is considered frivolous if it would not have been brought in good faith by a reasonable, prudent attorney." *Dreisilker Electric Motors, Inc. v. Rainbow Electric Co.*, 203 Ill. App. 3d 304, 312 (1990). The imposition of Rule 375 sanctions is left entirely to the discretion of the appellate court. *Kheirkhahvash v. Baniassadi*, 407 Ill. App. 3d 171, 182 (2011).

¶ 78    In the present case, the plaintiffs' arguments ultimately lack merit, but we do not find that their appeal is frivolous. The plaintiffs support their position with good faith arguments stemming from the language of the Code and supreme court rules. We disagree with the arguments of Calhoun, Bayard, and Mark XVI that this appeal is one that would not be brought in good faith by a reasonable and prudent attorney. In denying Calhoun, Bayard, and Mark XVI's request for Rule 375(b) sanctions, we offer no opinion on the merits of any legal or factual issues stemming from the pending Rule 137 motions for sanctions.

¶ 79                                    III. CONCLUSION

¶ 80    For the foregoing reasons, we affirm the circuit court's contempt judgment and deny the appellees' request for sanctions pursuant to Rule 375(b). We remand this cause for further proceedings on the pending motions for Rule 137 sanctions, including the discovery ordered by the circuit court.

¶ 81    Affirmed and remanded.

**No. 5-19-0276**

| | |
|---|---|
| **Cite as:** | *Hursey v. Calhoun*, 2020 IL App (5th) 190276 |
| **Decision Under Review:** | Appeal from the Circuit Court of St. Clair County, No. 17-L-486; the Hon. Julie K. Katz, Judge, presiding. |
| **Attorneys for Appellant:** | Alexander N. Loftus and Jeffrey L. Dorman, of Stoltmann Law Offices, P.C., of Chicago, and David I. Cates, of Cates Mahoney, LLC, of Swansea, for appellants. |
| **Attorneys for Appellee:** | George W. Spellmire and Timothy J. McInerney, of Spellmire Bruck, LLP, of Chicago, and Steven M. Hamburg, of Steven M. Hamburg, P.C., of St. Louis, Missouri, for appellees Barry Calhoun and Bayard Business Capital, Inc.<br><br>Andrew J. Martone and Josephine P. Abshier, of Hesse Martone, P.C., of St. Louis, Missouri, for other appellee. |