**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2025 IL App (3d) 240157-U

Order filed June 23, 2025

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2025

| | | |
|---|---|---|
| JEFFREY WEBBER, | ) | Appeal from the Circuit Court |
| | ) | of the 13th Judicial Circuit, |
| Plaintiff-Appellant, | ) | Bureau County, Illinois, |
| | ) | |
| v. | ) | Appeal No. 3-24-0157 |
| | ) | Circuit No. 22-LA-27 |
| LOIS ZIMMERLEIN individually and as | ) | |
| alleged power of attorney for Howard | ) | Honorable |
| Zimmerlein, her husband, and KENDALL | ) | Geno J. Caffarini, |
| KUETZER, | ) | Judge, Presiding. |
| | ) | |
| Defendants-Appellees. | ) | |

_____

JUSTICE BERTANI delivered the judgment of the court.
Justices Holdridge and Anderson concurred in the judgment.

_____

**ORDER**

¶ 1     *Held*: The circuit court properly dismissed plaintiff's first and second amended complaints with prejudice as plaintiff failed to allege facts to state a valid claim for defamation *per se*, breach of contract, and conversion. The court did not err in holding plaintiff in indirect civil contempt for his noncompliance with its sanction orders.

¶ 2     Plaintiff, Jeffrey Webber, a self-represented litigant, appeals from the denial of his motion to reconsider the dismissal of his second amended complaint which asserted two counts of

defamation *per se* against defendants, Lois Zimmerlein and Kendall Kuetzer.[1] He alleged that defendants defamed him by promulgating to local authorities and the public the idea that he had stolen property and vehicles. On appeal, Webber broadly challenges the circuit court's rulings on his defamation counts as well as causes of action alleged in his prior pleadings, all of which were dismissed with prejudice. He also contends that the court lacked jurisdiction to make these rulings, that his filing of a lawsuit against the court obligated recusal, and it erred in holding him in indirect civil contempt for his noncompliance with court orders. We affirm.

## I. BACKGROUND

¶ 4    Howard Zimmerlein is a farmer. For years he ran a farming operation with Webber as his farmhand. Based on the pleadings, Webber's role in the enterprise was to jointly plan crop planting with Howard, operate vehicles, and repair vehicles and equipment. Webber also purchased certain equipment to aid the farming operation and stored this property along with other personal miscellaneous items in sheds and buildings located on the Zimmerleins' land. In April 2022, before the pair's farming plans could be carried out for that year, Howard endured a stroke rendering him unable to work.

¶ 5    On August 25, 2022, Webber filed a seven-count complaint against Lois, Howard's wife, and Kuetzer, Howard's brother-in-law who assumed responsibility for the farming operation after Howard's stroke. In support, Webber set forth that he and Howard had planned the 2022 farming season and acted pursuant to the plan by purchasing farming products prior to Howard's illness. Lois and Kuetzer subsequently fired him in August and ordered him to vacate the properties.

---

[1]At various points in the record, the surname Kuetzer has been stylized as "Keutzer" and "Kuetzer." We defer to the spelling used in his appearance entered on appeal.

¶ 6    Counts I and II alleged that by refusing to allow him to carry out the 2022 farming plans, Lois and Kuetzer breached and tortiously interfered in Webber's employment contract with Howard. Counts III and IV restated verbatim defamation allegations against Lois, differentiated only by their titles of "slander" and "defamation of character," which claimed she falsely told others that Webber stole and sold Howard's property. Webber levied similar defamation allegations against Kuetzer in counts V and VI. Count VII asserted a civil conversion claim against defendants for their purported refusal to allow Webber to retrieve his farm equipment stored on the Zimmerleins' property.

¶ 7    Defendants respectively moved to dismiss the complaint, and on the date defendants' motions were scheduled for presentment, Webber filed his first of four requests for substitution of judge. The court granted his request as a matter of right. 735 ILCS 5/2-1001(a)(2)(i) (West 2022).

¶ 8    Meanwhile, an attorney acting on behalf of Howard served Webber with a landlord's notice to quit, terminating his tenancy of the building commonly known as the "Van Orin Elevator." Lois, as the attorney-in-fact for Howard, filed an eviction complaint against Webber in case No. 2022-EV-64, which the Zimmerleins moved to consolidate with Webber's lawsuit on February 27, 2023.

¶ 9    On March 14, 2023, the parties' outstanding motions came before the reassigned court. Following a hearing, the court dismissed all seven counts of Webber's complaint as insufficiently pled with leave to replead save for the breach of contract claim against Kuetzer, which it dismissed with prejudice. The court granted the Zimmerleins' motion to consolidate their eviction action with Webber's lawsuit. It further directed Webber to remove his undisputed property from the Zimmerleins' buildings within 30 days, including his belongings at the Van Orin Elevator, which Webber agreed to do. Webber's acquiescence led to the entry of an eviction order in the circuit court which this court later affirmed. *Howard Zimmerlein v. Jeffrey Webber*, No. 3-23-0183 (2024)

3

(unpublished summary order under Illinois Supreme Court Rule 23(c)). The hearing concluded with the court's admonishment to Webber that filing frivolous pleadings gives rise to the possibility of sanctions.

¶ 10    The court's cautioning went unheeded. Soon after the hearing, Webber filed four motions in quick succession: (1) a motion for clarification on the dismissal of his breach of contract count, or in the alternative, reconsideration of the dismissal; (2) a motion for a temporary restraining order or preliminary injunction seeking to enjoin Kuetzer from disposing of his personal property; (3) a motion to add Lois's and Kuetzer's attorneys to the lawsuit (despite having no valid complaint on file), claiming they made false assertions in open court that he had stolen vehicles and therefore defamed him; and (4) a motion for sanctions against Lois's attorney, alleging the attorney instructed an auction yard owner to not comply with one of his subpoenas.

¶ 11    In Kuetzer's response to Webber's motion to add defendants, he explained that no such theft allegations were made by his attorney during the March 14, 2023, hearing, and in any event, the motion should be denied because the absolute litigation privilege bars an action based on statements made in open court. He sought sanctions pursuant to Illinois Supreme Court Rule 137, asserting Webber ignored the court's admonishment by filing frivolous post-hearing motions. Ill. S. Ct. R. 137 (eff. Jan. 1, 2018). In addition to joining Kuetzer's response motion, Lois filed a cross-motion for sanctions in response to Webber's motion for sanctions, describing his allegations that her attorney had meddled with his subpoena as "blatantly false." Her attorney attached a notarized affidavit to the response averring the same.

¶ 12    On April 3, 2023, the court conducted a hearing on Webber's motions and defendants' cross-motions for sanctions, during which Webber altered the narrative in his motion to add by asserting that the attorneys made the defamatory theft allegations after the hearing. Concerning his

4

motion for sanctions, he conceded that he did not know how Lois's attorney interfered with his subpoena. Following argument, the court entered a written order finding that with the exception of his motion for clarification, Webber's post-hearing motions were frivolous and filed in bad faith. It granted defendants' cross-motions and held that sanctions were warranted but reserved judgment before imposing a penalty.

¶ 13    A week later, Webber filed his first amended complaint, repleading the seven previously dismissed counts. He added Howard as a party in a contract claim, divulged supplemental facts on the nature of their employment relationship including his hourly rate, and explained financial debts he had incurred while acting in preparation of the unrealized 2022 farming plans. While he also pled additional facts in his defamation counts, the amended pleading effectively mirrored his original complaint. Lois, Howard, and Kuetzer filed separate motions to dismiss.

¶ 14    The parties reconvened before the court on April 17, 2023, for its sanction determination. The court directed Webber to pay defendants' attorney fees and costs necessary to defend against the three frivolous motions. In its written order, the court justified the sanction based on Webber's intention to harass defendants and their attorneys, increase litigation costs, and his failure to "appreciate the seriousness of the legal system."

¶ 15    On April 24, 2023, Webber sent a letter to the chief judge of the Thirteenth Judicial District purporting that the judge assigned to his lawsuit had a conflict of interest. Thereafter, defendants' attorneys filed their fee affidavits which were set for presentment on June 5, 2023. On that date, however, Webber filed a motion seeking another substitution of judge for cause. The court read

Webber's letter into the record, suspended the fee proceeding, and transferred the motion for substitution to a different judge who denied the motion on July 7, 2023.[2]

¶ 16    Before the attorney fees hearing resumed, Webber filed his fourth motion for substitution of judge alleging the court was prejudiced against him and reiterating his position that the judge had a conflict of interest.

¶ 17    The court denied Webber's motion for substitution on July 11, 2023, and ordered Webber to pay defendants' attorney fees, totaling $4,067.20, within 45 days before turning to defendants' motions to dismiss the first amended complaint. Webber objected to the circuit court hearing the motions, arguing that the court had consolidated his suit with the eviction case brought against him that was currently on appeal, and he had not received necessary records he subpoenaed from the Lee and Bureau County police departments. The court heard arguments and took defendants' motions to dismiss under advisement.

¶ 18    Webber filed a motion to reconsider the July 7, 2023, order denying his motion for substitution maintaining his position that the court had a conflict. On August 4, 2023, the substitute judge heard and denied his motion. After resuming the matter, the court granted dismissal of Webber's defamation *per se* counts against Lois and Kuetzer without prejudice and dismissed the remaining causes of action in the first amended complaint with prejudice pursuant to section 2-615 of the Code of Civil Procedure (Code). 735 ILCS 5/2-615 (West 2022).

¶ 19    On September 1, 2023, Webber filed a second amended complaint. The pleading began with a paragraph "object[ing] to the Court's decision to dismiss" his breach of contract and

---

[2]Webber filed his third motion for substitution of judge in anticipation of the hearing, arguing the court set to decide his motion for substitution was partial.

conversion counts. Webber indicated that "[t]hose issues" including the court's allowing "Defendants to continue to commit conversion" would "be taken up on appeal."

¶ 20　　　The second amended pleading included the two defamation *per se* counts against Lois and Kuetzer. He alleged that "Lois and Kuetzer have advised everyone they can approach not to do business with him" and also "advised numerous people that" he is stealing property from Howard. His direct allegations against Lois included that she contacted the Lee and Bureau County police departments to report theft, that she "told people in Van Orin" he had stolen vehicles, and that she made similar allegations in the presence of community members which Webber identified. Kuetzer, Webber pled, also called the Bureau County police department to report vehicle theft and "told the former owner" of a pickup truck that Webber had stolen the vehicle.

¶ 21　　　On September 12, 2023, 63 days after the court sanctioned Webber, Lois filed a petition for rule to show cause that was later joined by Kuetzer, asserting Webber had failed to tender attorney fees pursuant to the court's sanction. Kuetzer eventually withdrew his petition, and the court vacated the order on his rule to show cause, but the matter proceeded on Lois's petition culminating in a contempt hearing. Defendants also moved to dismiss Webber's second amended complaint pursuant to section 2-615 of the Code.

¶ 22　　　On October 24, 2023, the court entered an order vacating the consolidation of the eviction case and Webber's lawsuit *nunc pro tunc* to April 17, 2023, based on Webber's agreement to vacate the premises. Lois's attorney presented an order for rule to show cause. Prior to entering the order, the court explained the potential ramifications Webber faced if held in indirect civil contempt, which included the possibility of incarceration. It also provided Webber with a financial affidavit form and invited him to complete it before the contempt proceeding. Webber rebuffed the court's invitation.

¶ 23     On December 8, 2023, Webber filed a complaint titled "complaint violation of civil rights" against the court, claiming the court denied his right to a jury trial. That day, the court granted defendants' motions to dismiss the defamation *per se* counts against them with prejudice following a hearing. The court also conducted a contempt proceeding during which Lois's attorney described a voicemail that he received from Webber stating he had no intention of paying the sanction. The court entered two written orders memorializing its holdings. The first reflected its dismissal of Webber's second amended complaint which included a Rule 304(a) finding that there was no just reason for delaying the enforcement or appeal. Ill. S. Ct. R. 304(a) (eff. Mar. 8, 2016). The second was an order holding Webber in indirect civil contempt for his refusal to comply with court orders to pay the attorney fees assessed against him. It ordered Webber's incarceration for an indefinite period of time at the Bureau County Correctional Center until he purged himself of contempt by tendering payment. Webber purged himself of contempt prior to the next hearing.

¶ 24     Webber filed a motion to reconsider on January 5, 2024. Among other allegations, Webber ascribed improper conduct to the court during the underlying proceedings, stating it disregarded facts, misquoted documents, "overstepped [its] bounds by taking over the" consolidated cases on appeal, and violated his rights by jailing him and finding him in contempt. He requested all prior court orders be vacated. The court heard arguments and denied his motion.

¶ 25     This appeal followed.

¶ 26                                    II. ANALYSIS

¶ 27     Webber's appellate arguments are wide-ranging but fall within two general categories. First, he challenges the circuit court's rulings. He argues that the court erred in dismissing his breach of contract, tortious interference with contract, duplicative defamation, and civil conversion claims as pled in his first amended complaint and his defamation *per se* claims in his second

8

amended complaint. He also asserts the court erred by holding him in indirect civil contempt. Second, Webber challenges the court's authority to act, contending that by consolidating the eviction case with his lawsuit, the former's appeal deprived the court of jurisdiction. Similarly, he asserts that his filing of a lawsuit against the court mandated recusal.

¶ 28 Before reaching the merits of Webber's arguments, defendants submit that Webber's appeal is procedurally flawed. Kuetzer asserts that Webber's appellate brief does not comport with Illinois Supreme Court Rule 341(h)'s requirements and should therefore be stricken. Ill. S. Ct. R. 341(h) (eff. Oct. 1, 2020). Kuetzer and Lois claim that by solely alleging defamation *per se* in his second amended complaint, Webber has waived appellate review of his breach of contract, tortious interference, "defamation of character," and conversion counts.

¶ 29 A. Request to Strike

¶ 30 Kuetzer requests we strike Webber's appellate brief for its numerous violations of Illinois Supreme Court Rule 341(h). Ill. S. Ct. R. 341(h) (eff. Oct. 1, 2020).

¶ 31 Illinois Supreme Court rules are not mere suggestions and must be followed. *Ittersagen v. Advocate Health & Hospitals Corp.*, 2021 IL 126507, ¶ 37. Where an appellate brief does not comply with our supreme court rules, we may strike portions of the brief or should circumstances warrant, dismiss the appeal. *Id.* Rule 341 is designed to facilitate the clear and orderly presentation of appellate arguments (*Hall v. Naper Gold Hospitality LLC*, 2012 IL App (2d) 111151, ¶ 15) and Webber's status as a self-represented litigant does not absolve his responsibility to comply with appellate procedures mandated by this rule (*Coleman v. Akpakpan*, 402 Ill. App. 3d 822, 825 (2010)).

¶ 32 Kuetzer correctly asserts that Webber's brief violates numerous provisions of Rule 341(h). Most glaringly, the brief fails to identify the applicable standards of review for Webber's appellate

9

issues, as is required by Rule 341(h)(3) and our local rules. Ill. S. Ct. R. 341(h)(3) (eff. Oct. 1, 2020); Ill. App. Ct., Third Dist., R. 104(b) (Sept. 1, 2021) ("[A]ppellant shall set forth the standard of review under a separate section titled 'Standard of Review.' "). Rule 341(h)(6) requires a statement of facts "with appropriate reference to the pages of the record on appeal," but Webber's fact section scantly cites the record. Ill. S. Ct. R. 341(h)(6) (eff. Oct. 1, 2020). The brief's argument section does not comport with Rule 341(h)(7)'s requirement to cite the authorities and appropriate pages of the record relied upon. *Id.* § (h)(7). The brief adopts several sections to support multiple dismissed counts rather than containing particularized contentions and reasoning for each issue. *Id.*

¶ 33   Although Webber's brief is noncompliant, we deny Kuetzer's request to strike it in its entirety. Striking a brief, " 'in whole or in part, is a harsh sanction' " one reserved for " 'when the alleged violations of procedural rules interfere with or preclude review.' " *In re Detention of Powell*, 217 Ill. 2d 123, 132 (2005) (quoting *Moomaw v. Mentor H/S, Inc.*, 313 Ill. App. 3d 1031, 1035 (2000)). Noncompliance with Rule 341 does not divest our jurisdiction; instead, the rule serves as an admonishment to the parties. *Brown v. Brown*, 62 Ill. App. 3d 328, 332 (1978). Notwithstanding the brief's deficiencies, we retain discretion to reach an appeal's merits where (1) an appellant's brief allows us to discern the appellate arguments (see *Young v. City of Centreville*, 169 Ill. App. 3d 166, 169 (1988)), (2) the facts underlying the appeal are simple (*In re Marriage of Burke*, 185 Ill. App. 3d 253, 255 (1989)), and (3) reaching the merits best serves the interests of judicial economy. See *Zadrozny v. City Colleges of Chicago*, 220 Ill. App. 3d 290, 293 (1991).

¶ 34   Webber's appellate arguments are varied, but the facts before us are straightforward, and his brief allows us to discern the bulk of his arguments. We choose, however, to disregard one particularly spurious and unsupported argument within the brief: his contention that the court was

obligated to recuse itself after he filed a lawsuit against it. *In re Marriage of Ash & Matschke*, 2021 IL App (1st) 200901, ¶ 32. Webber presents this argument without citation to authority. He fails to address how his filing against the court on the eve of his contempt proceeding and after multiple unsuccessful motions for substitution obligated recusal, and of equal importance, how recusal would have served the orderly administration of justice.

¶ 35                                   B. Claim Preservation

¶ 36        Turning to the issue of claim preservation, defendants state that Webber waived appellate review of counts dismissed in his original and first amended complaints by filing his second amended complaint. Defendants cite the well-established principle enshrined by our supreme court in *Foxcroft Townhome Owners Ass'n v. Hoffman Rosner Corp.*, "that a party who files an amended pleading waives any objection to the trial court's ruling on the former complaints." 96 Ill. 2d 150, 153 (1983). Among the many policy considerations supporting this principle is to ensure a defendant receives proper notice of the alleged causes of action. "When a complaint is amended, without reference to the earlier allegations, it is expected that these allegations are no longer at issue." *Id.* at 154. Whether a dismissed claim has been preserved for appellate review is a question of law which we review *de novo*. *Bonhomme v. St. James*, 2012 IL 112393, ¶ 17.

¶ 37        A party may exercise several options to avoid the *Foxcroft* rule's application, thereby preserving challenge to an order dismissing fewer than all counts of a complaint with prejudice:

> "First, the plaintiff may stand on the dismissed counts and argue the matter at the appellate level. [Citation.] Second, the plaintiff may file an amended complaint realleging, incorporating by reference, or referring to the claims set forth in the prior complaint. [Citation.] Third, a party may perfect an appeal from the order dismissing fewer than all of the counts of his or her complaint prior to filing an

11

amended pleading that does not include reference to the dismissed counts. [Citation.]" *Vilardo v. Barrington Community School District 220*, 406 Ill. App. 3d 713, 719 (2010).

¶ 38 Webber's second amended complaint contained two counts of defamation *per se* and did not replead any of the remaining five previously dismissed counts. As such, Webber did not avail himself of any above-mentioned preservation options for his tortious interference and duplicative defamation claims and has abandoned review of those counts.

¶ 39 In contrast, Webber preserved review of his breach of contract and conversion claims by adequate reference in his second amended complaint. The introductory paragraph identifies these counts, objects to their dismissal, and forewarns of his intention to appeal on that basis. This paragraph suffices in evading forfeiture under *Foxcroft*. See *Tabora v. Gottlieb Memorial Hospital*, 279 Ill. App. 3d 108, 114 (1996) ("A simple paragraph *** in the amended pleadings notifying defendants and the court that plaintiff was preserving the dismissed portions of his former complaints for appeal" is sufficient to avoid the *Foxcroft* rule).

¶ 40                                              C. Circuit Court Jurisdiction

¶ 41 The third threshold issue presented is Webber's contention that the circuit court was divested of jurisdiction over his lawsuit when he certified the consolidated companion eviction case for appeal. Defendants correctly contend that the Zimmerlein's eviction case and Webber's lawsuit were consolidated as a matter of convenience, that the cases retained their separate identities, and therefore the circuit court retained jurisdiction to rule on Webber's lawsuit.

¶ 42 Whether the circuit court properly exercised jurisdiction is reviewed *de novo*. *O'Neill v. Director of Illinois Department of State Police*, 2015 IL App (3d) 140011, ¶ 16. The Code permits the consolidation of "actions pending in the same court *** as an aid to convenience, whenever it

12

can be done without prejudice to a substantial right." 735 ILCS 5/2-1006 (West 2022). Illinois courts recognize three ways in which actions may be consolidated:

"(1) where several actions are pending involving the same subject matter, the court may stay proceedings in all but one of the cases and determine whether the disposition of one action may settle the others; (2) where several actions involve an inquiry into the same event in its general aspects, the actions may be tied together, but with separate docket entries, verdicts and judgment, the consolidation being limited to a joint trial; and (3) where several actions are pending which might have been brought as a single action, the cases may be merged into one action, thereby losing their individual identity, to be disposed of as one suit." *Busch v. Mison*, 385 Ill. App. 3d 620, 624 (2008); *Trilisky v. City of Chicago*, 2019 IL App (1st) 182189, ¶ 21.

¶ 43     This matter deals with the second type of consolidation. While the circuit court did not provide a reason for granting the Zimmerleins' request to consolidate, the record is evident that it was done for convenience. The court maintained separate docket entries, and its subsequent eviction order only pertained to the Zimmerleins' eviction lawsuit. The lack of uniformity between parties, with Kuetzer's inclusion as a defendant in Webber's lawsuit, also lends credence that the matters kept a separate identity. *In re Adoption of S.G.*, 401 Ill. App. 3d 775, 783 (2010).

¶ 44     Our conclusion is bolstered by Webber's notice of appeal in the eviction matter only referencing that case number (No. 2022-EV-64) and identifying the order appealed from, which was the circuit court's eviction order. That notice conferred upon us jurisdiction to consider only the circuit court's eviction order, and the circuit court retained jurisdiction over Webber's lawsuit. *General Motors Corp. v. Pappas*, 242 Ill. 2d 163, 176 (2011) ("A notice of appeal confers

13

jurisdiction on a court of review to consider only the judgments or parts of judgments specified" therein). In sum, consolidation did not merge the eviction and tort causes into a single suit. Rather, the lawsuits maintained their individual identities despite consolidation, and Webber's appeal of the eviction order did not divest the circuit court of jurisdiction over his lawsuit. See *Town of Libertyville v. Bank of Waukegan*, 152 Ill. App. 3d 1066, 1072 (1987) ("While the general rule is that the filing of a notice of appeal divests the trial court of jurisdiction, the trial court retains jurisdiction to determine matters collateral or incidental to the judgment.").

¶ 45                                    D. Section 2-615 Dismissal

¶ 46        Webber contends that the circuit court erred in dismissing his defamation *per se*, breach of contract, and conversion counts. The court granted dismissal of these counts pursuant to section 2-615 of the Code. A section 2-615 motion to dismiss challenges the legal sufficiency of a complaint by asserting there are certain defects on its face. *Heastie v. Roberts*, 226 Ill. 2d 515, 531 (2007); 735 ILCS 5/2-615(a) (West 2022). An order granting a section 2-615 motion to dismiss presents a question of law which we review *de novo. Heastie*, 226 Ill. 2d at 530-31.

¶ 47        The "critical question" with a section 2-615 motion "is whether the allegations in the complaint, construed in the light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief may be granted." *Jane Doe-3 v. McLean County Unit District No. 5 Board of Directors*, 2012 IL 112479, ¶ 16. Illinois is a fact-pleading jurisdiction that requires a plaintiff to allege facts, not mere conclusions, to viably plead a cause of action. *Napleton v. Village of Hinsdale*, 229 Ill. 2d 296, 305 (2008). At this stage, all well-pled facts are taken as true. *Jane Doe-3*, 2012 IL 112479, ¶ 16. Legal and factual conclusions unsupported by specific factual allegations will be disregarded. *Simmons v. Campion*, 2013 IL App (3d) 120562, ¶ 21; *Pooh-Bah Enterprises, Inc. v. County of Cook*, 232 Ill. 2d 463, 473 (2009). To dismiss a cause of action under section 2-

14

615, it must be "clearly apparent that no set of facts can be proved that would entitle the plaintiff to recovery." *Green v. Rogers*, 234 Ill. 2d 478, 491 (2009). This "broad statement," however, does not allow a plaintiff to avoid fact-pleading conformity. *Lagen v. Balcor Co.*, 274 Ill. App. 3d 11, 16 (1995).

¶ 48                                          1. Defamation *Per Se* Counts

¶ 49        Webber's defamation *per se* counts against Lois and Kuetzer in his second amended complaint include certain common factual allegations that defendants contacted local county sheriff's departments to report his stealing of Howard's property, namely a vehicle.

¶ 50        Individualized allegations against defendants include: (1) Lois stated that Webber stole one of Howard's white pickup trucks in the presence of Mark Rodd and his family; (2) on June 24, 2022, Lois allegedly called Webber a "whore, a hoarder and a thief" in the presence of Dave Fogle, his wife, Rick Lampkin, and two other community members; (3) Kuetzer informed a "former owner" of a "Dodge Ram pickup" that Webber had stolen the vehicle from Howard; and (4) a generic allegation that Kuetzer "has repeatedly and in front of numerous people" alleged theft. Webber pleads that as a result of these statements, he cannot start or fulfill a series of contracts with neighbors and business associates and that he has been denied opportunities to conduct business. These allegations do not state a valid claim for defamation *per se*.

¶ 51        A statement is defamatory if it "cause[s] such harm to the reputation of another that it lowers that person in the eyes of the community or deters third persons from associating" or dealing with him. *Bryson v. News America Publications, Inc.*, 174 Ill. 2d 77, 87 (1996) (citing Restatement (Second) of Torts § 599 (1977)). To state a claim for defamation, plaintiff's factual allegations must show that the defendant made an unprivileged publication of a false statement about the plaintiff to a third party and that the statement caused damages. *Green*, 234 Ill. 2d at 491. Webber

15

alleges defamation *per se*, meaning the harm of the statements is obvious and facially apparent. *Id.* Two of the various categories of statements recognized in Illinois as defamatory *per se* that are implicated by Webber's allegations include words that impute "a person has committed a crime" and "a person has engaged in adultery or fornication." *Id.* at 491-92.

¶ 52    Defamation *per se* is subject to a heightened pleading requirement. *Id.* at 495. While not required to set forth the defamatory words *in haec verba*, the claim must include a description of the allegedly defamatory words with "a heightened level of precision and particularity" to permit judicial review. *Id.* at 492, 495. "The preliminary construction of an allegedly defamatory statement is a question of law, and our review therefore is *de novo*." *Id.* at 492.

¶ 53    Addressing Webber's allegations, defendants correctly point out that any statements made to law enforcement officials for the purpose of instituting legal proceedings are absolutely privileged. *Razavi v. Walkuski*, 2016 IL App (1st) 151435, ¶ 12. We presume "in the context of reports to traditional law enforcement," which is the basis of Webber's allegation, that the statements were "made for the purpose of constituting legal proceedings." *Id.* ¶ 16.

¶ 54    The allegations of Lois's and Kuetzer's statements regarding stolen vehicles to community members lack the precision and particularity required to state a valid defamation *per se* cause of action. The allegations do not state when the statements were made, and in the instance of Kuetzer's allegation, Webber does not adequately identify the listener. See *Moore v. People for the Ethical Treatment of Animals, Inc.*, 402 Ill. App. 3d 62, 71 (2010) (explaining failure to allege where and when postings were made were insufficiently precise to state a claim for defamation *per se*). Similar imprecision disqualifies Webber's allegation that Kuetzer "has repeatedly and in front of numerous people" alleged theft.

16

¶ 55    Webber's most particularized allegation of defamation *per se* is one against Lois, which includes the date of the statement (June 24, 2022), the statement ("whore, a hoarder and a thief"), and identifies several individuals who overheard the statement. Accepted as true, however, this statement does not "directly or expressly accuse the plaintiff of committing a specific crime" which is necessary to be actionable as defamation *per se*. *Lansing v. Carroll*, 2015 WL 3962345, at *8 (N.D. Ill. June 29, 2015) (citing Illinois appellate decisions holding the same).

¶ 56    Further, a reasonable listener could not construe the disparaging remark that Webber is a "whore" as a commentary on his unchasteness. Alleged defamatory statements must be construed in context to determine their impact on a reasonable reader or listener. See *Bryson*, 174 Ill. 2d at 94; see also *Hadley v. Doe*, 2014 IL App (2d) 130489, ¶¶ 3, 28-30 (asserting the context of an online comment comparing plaintiff, a county board candidate, to a well-known pedophile imputed the commission of a crime and was not subject to innocent construction). Taken as true and in context, the word's natural and obvious meaning was one of several derogatory insults directed towards Webber's purported unscrupulousness. *Hadley*, 2014 IL App (2d) 130489, ¶ 23. This statement is therefore subject to innocent construction for purposes of failing to state a valid defamation *per se* claim. See *Moore*, 402 Ill. App. 3d at 70-71.

¶ 57    While allegations in a pleading should be read in the aggregate (*Doe ex rel. Doe v. Catholic Diocese of Rockford*, 2015 IL App (2d) 140618, ¶ 27), Webber's allegations cover disparate statements, and each statement is inadequate to state a claim for defamation *per se*. Accordingly, the circuit court did not err in dismissing Webber's second amended complaint.

¶ 58                    2. Breach of Contract Count

¶ 59    Webber asserts that he pled the ultimate facts necessary to state a valid claim for breach of contract in his first amended complaint. In order to state a cause of action for breach of contract a

17

plaintiff is required to plead (1) the existence of a valid and enforceable contract, (2) performance by the plaintiff, (3) a breach of the contract by the defendant, and (4) that defendant's breach resulted in damages. *McCleary v. Wells Fargo Securities, L.L.C.*, 2015 IL App (1st) 141287, ¶ 19. To demonstrate the existence of a contract, a complaint must contain allegations indicating offer, acceptance, and consideration. *Wait v. First Midwest Bank/Danville*, 142 Ill. App. 3d 703, 706 (1986). A general allegation that a contract exists is a legal conclusion insufficient to prove its existence. See *Talbert v. Home Savings of America, F.A.*, 265 Ill. App. 3d 376, 380 (1994).

¶ 60    The breach of contract count is deficiently pled in several ways. To begin, a fundamental precept of contract law is that an agreement does not bind a nonparty. See *Carter v. SSC Odin Operating Co., LLC*, 2012 IL 113204, ¶¶ 55-56. Neither Lois nor Kuetzer are parties to the alleged contract and therefore seeking recovery against them individually is in error. *Payne v. Mill Race Inn*, 152 Ill. App. 3d 269, 273 (1987) ("An adequate complaint based upon breach of contract must allege the existence of a contract between *plaintiff and defendant*.") (emphasis added.)

¶ 61    Webber failed to specify whether his agreement with Howard was reduced to writing and therefore, based on the pleadings, we assume it was an oral contract. *O.K. Elecectric Co., Inc. v. Fernandes*, 111 Ill. App. 3d 466, 470 (1982). It is well settled that "for an agreement to be legally binding, it must be reasonably definite and certain in its terms." *Midwest Builder Distributing, Inc. v. Lord & Essex, Inc.*, 383 Ill. App. 3d 645, 658 (2007). "If the contract terms are too uncertain or indefinite to enforce, allegations of a breach of those terms will not provide a basis for a breach of contract claim." *Babbitt Municipalities, Inc. v. Health Care Service Corp.*, 2016 IL App (1st) 152662, ¶ 30.

¶ 62    Beyond the conclusory allegation of an "ongoing contract" with Howard, Webber's breach of contract count fails to provide any definiteness concerning when, where, or how Howard

conveyed an offer of employment to Webber, the means of Webber's acceptance, and by what terms bound their agreement. See *Wait*, 142 Ill. App. 3d at 707 (explaining assertions of oral acceptance must include allegations of specific fact supporting that theory of acceptance). The first amended complaint avers vaguely that Webber and Howard "have been engaged in all *** business interests" including a farming, trucking, and spraying operation, without any specificity concerning the nature and extent of the relationship or Webber's duties. The pleading includes additional uncertainties regarding his role in the 2022 farming plans which were based on a September 2021 "discuss[ion]" concerning the planting of certain fields. He further recites that he was to be paid $20 per hour for a minimum of 40 hours per week during the "farming season" and $30 per hour for overtime, up to a maximum of 105 hours per week. The allegations, while more specific than those in the original complaint, remain lacking in terms of his duties and the length of his alleged employment. The first amended complaint does not define the contractual terms or other essential requirements with enough certainty to sustain a breach of contract action. It fails to allege the existence of a valid and enforceable agreement beyond conclusory allegations. As such, the circuit court did not err in dismissing Webber's breach of contract count.

¶ 63                                    3. Conversion Count

¶ 64         Webber posits that his civil conversion count pled in his first amended complaint stated a valid cause of action. He alleged that Lois and Kuetzer converted his "tools, implements, vehicles, and farm equipment" he had stored on the Zimmerleins' property, and 600 bushels of "grain." The pleading is characterized by a near total lack of specificity in describing the property alleged to have been converted. While "grain" is marginally descriptive, Webber fails to identify the type of grain. Webber's appellate brief goes on to supplement the description of certain property

19

purportedly converted including "titles to paperwork" and (now) "2,600 bushels of grain" which is both no more descriptive and improper given that it is not in the record before us.

¶ 65   Conversion is the wrongful " 'deprivation of one who has a right to the immediate possession of the object unlawfully held.' " *Karimi v. 401 N. Wabash Venture, LLC*, 2011 IL App (1st) 102670, ¶ 15 (quoting *Bender v. Consolidated Mink Ranch, Inc.*, 110 Ill. App. 3d 207, 213 (1982)). To state a valid claim for conversion,

> "a plaintiff must establish that (1) he has a right to the property; (2) he has an absolute and unconditional right to the immediate possession of the property; (3) he made a demand for possession; and (4) the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property."
> *Cirrincione v. Johnson*, 184 Ill. 2d 109, 114 (1998).

¶ 66   Webber simply failed to describe the property for which he seeks recovery with any particularity. His attempt to supplement his conversion claim with additional factual allegations on appeal is without merit and similarly lacks the requisite specificity. In failing to adequately describe the alleged converted property and his right thereto, Webber has not met Illinois's fact-pleading standard. *City of Chicago v. Beretta U.S.A. Corp.*, 213 Ill. 2d 351, 368 (2004). Further, regarding the third conversion element, Webber merely alleged "that he made demands to both Lois and Kendalll [*sic*], and to them together, to return" the property. This conclusory allegation fails to describe when or how this demand was made and is insufficient to state a claim for conversion. *Mayle v. Urban Realty Works, LLC*, 2022 IL App (1st) 210470, ¶ 78. Considering the foregoing, the court did not err in dismissing Webber's conversion count as inadequately pled.

¶ 67                            4. Dismissal with Prejudice

20

¶ 68 Webber has not specifically raised the issue of whether dismissal with prejudice was appropriate. He has, however, challenged the dismissal of these causes of action and the mode of dismissal is therefore a corollary issue before us. Dismissing a cause of action with prejudice is not favored. *Morr-Fitz, Inc. v. Blagojevich*, 231 Ill. 2d 474, 488 (2008) ("[A] cause of action should not be dismissed with prejudice unless it is clear that no set of facts can be proved under the pleadings which would entitle plaintiffs to relief."). However, Webber's first and second amended pleadings are before us, and he did not utilize his prior opportunities to amend to state valid causes of action. *Vogt v. Round Robin Enterprises, Inc.*, 2020 IL App (4th) 190294, ¶ 29. Further, this court is mindful of the gamesmanship and improprieties visited upon the circuit court and the defendants by Webber. The circuit court has inherent authority to dismiss causes of action with prejudice for a failure to comply with court orders where the record reveals "a deliberate and continuing disregard for the court's authority." *Sander v. Dow Chemical Co.*, 166 Ill. 2d 48, 67 (1995). We conclude that the circuit court appropriately exercised its inherent authority here, and did not abuse its discretion in granting the dismissal with prejudice. *Lake Point Tower Condominium. Ass'n v. Waller*, 2017 IL App (1st) 162072, ¶ 21.

¶ 69                                    E.  Order of Indirect Civil Contempt

¶ 70 Webber asserts that he was wrongly held in indirect civil contempt and imprisoned for violating the court's sanction orders directing him to pay defendants' attorney fees. We disagree.

¶ 71 Contempt occurring outside of a circuit court's presence is considered indirect civil contempt. *Hursey v. Calhoun*, 2020 IL App (5th) 190276, ¶ 67. "Proof of willful disobedience of a court order is essential to any finding of indirect civil contempt." *In re Marriage of McCormick*, 2013 IL App (2d) 120100, ¶ 17. Disagreement with a court's order does not permit a party to

21

ignore its dictates. *Country Mutual Insurance Co. v. Hilltop View*, *LLC*, 2014 IL App (4th) 140007, ¶ 26.

¶ 72　　　The burden to establish indirect civil contempt begins with a petitioner proving by the preponderance of the evidence the contemnor's willful disobedience of a circuit court's order. *Hursey*, 2020 IL App (5th) 190276, ¶ 68. Failure to comply with an order serves as *prima facie* evidence of contempt. *Country Mutual*, *LLC*, 2014 IL App (4th) 140007, ¶ 26. If the petitioner satisfies his or her burden, the onus shifts to the contemnor to prove that the violation was not willful or contumacious and he or she had a valid excuse for failing to follow the order. *Hursey*, 2020 IL App (5th) 190276, ¶ 68. A contemnor behaves contumaciously where his or her "conduct [is] calculated to embarrass, hinder, or obstruct a court in its administration of justice or [it] lessen[s] the authority and dignity of the court." (Internal quotation marks omitted.) *In re Marriage of Knoll & Coyne*, 2016 IL App (1st) 152494, ¶ 50 (quoting *In re Marriage of Charous*, 368 Ill. App. 3d 99, 108 (2006)).

¶ 73　　　Whether a party is guilty of contempt is a question of fact left to the circuit court's determination. *In re Estate of Lee*, 2017 IL App (3d) 150651, ¶ 38. We will not disturb this determination unless it is against the manifest weight of the evidence or the record indicates an abuse of discretion. *Id.* "A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly apparent or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented." *Nicholson v. Wilson*, 2013 IL App (3d) 110517, ¶ 22. A contempt sanction's appropriateness is reviewed for an abuse of discretion. *In re Marriage of Harnack & Fanady*, 2022 IL App (1st) 210143, ¶ 57. A court abuses its discretion only when its "decision is arbitrary, fanciful, or unreasonable or where no reasonable person would take the view adopted by the trial court." *Seymour v. Collins*, 2015 IL 118432, ¶ 41.

¶ 74　　　　The record demonstrates Webber's clear noncompliance of the circuit court's April 17, 2023, and July 11, 2023, orders imposing Supreme Court Rule 137 sanctions. While mindful of the challenges self-representation presents, self-represented litigants are held to the same standards as litigants with legal representation. *Williams v. Department of Human Services Division of Rehabilitation Services*, 2019 IL App (1st) 181517, ¶ 30; *Titus v. Mohammed Alaeddin & Bashir & Sons, Inc.*, 2018 IL App (3d) 170400, ¶ 10 (explaining a litigant proceeding self-represented in a civil proceeding is presumed to comply with applicable court rules and procedures and is not entitled to more lenient treatment).

¶ 75　　　　At each turn, the circuit court informed Webber of the perils and related penalties that he may incur based on his indifference to rule compliance. Following the dismissal of his initial complaint, the court admonished Webber of his requirement to comply with Rule 137 and that violating this rule arises to sanctionable conduct. Disregarding the court's warning and Rule 137's purpose to prevent abuse of the judicial process (*Sundance Homes, Inc. v. County of DuPage*, 195 Ill. 2d 257, 285 (2001)), Webber filed three post-dismissal motions that were neither "well grounded in fact" nor "warranted by existing law." Ill. S. Ct. R. 137(a) (eff. Jan. 1, 2018). During the August 3, 2023, hearing, Webber was unable to explain any reasonable inquiry he undertook before filing these motions, conceded that he lacked knowledge of conduct that would support his motion for sanctions against Lois's attorney, and altered the narrative pled in his motion to add defendants' attorneys to his lawsuit.

¶ 76　　　　The April 17, 2023, order declaring that sanctions were appropriate and the July 11, 2023, order awarding them in the form of attorney fees and costs are clear and concise. Moreover, Webber had the requisite notice of the petition for rule to show cause and the resulting October 24, 2023, rule to show cause given that he was present in court when the rule issued. *In re Marriage*

23

*of Betts*, 200 Ill. App. 3d 26, 53 (1990); *First Midwest Bank/Danville v. Hoagland*, 244 Ill. App. 3d 596, 609 (1993). Webber did not claim at the hearing on the rule that the fees had been paid and, as such, the burden of proof shifted to him to establish that his failure was not "willful and contumacious." *Harnack*, 2022 IL App (1st) 210143, ¶¶ 46, 48. Webber declined to submit the financial affidavit previously provided to him by the court, claiming that it was for dissolution of marriage cases and not applicable, even though the court advised him he was to use it when it was given to him. Rather, he advised the court he had not paid because he was broke because the Zimmerleins had not paid him, and also because the value of the property the defendants allegedly converted exceeded the fees. The inability to pay as a defense to contempt must be supported by "definite and explicit evidence," by which the party must show with "reasonable certainty" his receipts and expenses, and which will not be met by generalizations. *In re Marriage of Chenoweth*, 134 Ill. App. 3d 1015, 1018-19 (1985).

¶ 77   The circuit court did not abuse its discretion in holding Webber in indirect civil contempt, imposing a period of indefinite confinement, and providing a purge that would direct his release. His indefinite imprisonment served its coercive purpose (*Harnack*, 2022 IL App (1st) 210143, ¶ 57), and he purged himself of contempt by complying with the sanction orders. *In re Marriage of Logston*, 103 Ill. 2d 266, 289 (1984).

¶ 78                                III. CONCLUSION

¶ 79   The judgment of the circuit court of Bureau County is affirmed.

¶ 80   Affirmed.

24